DA 10-0051

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 175

DEBBIE PATCH, as Personal Representative
of the Estate of BRANDON PATCH, Deceased,
and DEBBIE AND DUANE PATCH,

      Plaintiffs and Appellees,

  v.

HILLERICH & BRADSBY CO.,
d/b/a LOUISVILLE SLUGGER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis & Clark, Cause No. CDV 06-397
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Kyle Anne Gray (argued), Robert L. Sterup, and W. Scott Mitchell,
Holland & Hart, LLP, Billings, Montana

      For Appellees:

            Curt Drake (argued) and Michael A. Kauffman, Drake Law Firm, Helena,
Montana

Argued and Submitted:  January 26, 2011
Decided:  July 21, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 A jury in the First Judicial District Court, Lewis and Clark County, found Hillerich & Bradsby Company ("H&B") liable in strict products liability for failing to warn Brandon Patch (Brandon) and his parents of the risks associated with its model CB-13 aluminum baseball bat. H&B appeals.

¶2 We address the following issues on appeal:

¶3 Issue 1: *Did the District Court properly deny H&B's summary judgment motion on Patches' failure to warn claim?*

¶4 Issue 2: *Did the District Court properly deny H&B's Rule 50(b) motion for judgment as a matter of law?*

¶5 Issue 3: *Did the District Court properly grant Patches' motion in limine regarding H&B's assumption of the risk defense?*

¶6 Issue 4: *Did the District Court properly instruct the jury?*

¶7 Issue 5: *Should the verdict be set aside and a new trial granted?*

## BACKGROUND

¶8 While pitching in an American Legion baseball game on July 25, 2003, eighteen-year-old Brandon was struck in the head by a batted ball that was hit using H&B's model CB-13 aluminum bat. Tragically, Brandon died from his injuries.

¶9　In 2006, Brandon's parents, individually and as representatives of Brandon's estate, sued H&B in strict products liability[1] for survivorship and wrongful death damages, asserting manufacturing and design defect and failure to warn claims. Patches claimed H&B's model CB-13 aluminum bat was in a defective condition because of the enhanced risks associated with its use: It increased the velocity speed of a batted ball when it left the bat, thus decreasing infielders' reaction times,[2] and resulted in a greater number of high energy batted balls in the infield.

¶10　Before trial, the District Court granted H&B's motion for summary judgment on Patches' manufacturing defect claim, but denied summary judgment on Patches' design defect and failure to warn claims. The District Court granted Patches' motion in limine, excluding H&B's assumption of the risk defense. The matter was tried in October 2009, and Patches' design defect and failure to warn claims were submitted to the jury. The jury concluded the model CB-13 aluminum bat was not designed defectively, but determined the bat was in a defective condition due to H&B's failure to warn of the enhanced risks associated with its use and awarded Patches an $850,000 verdict on their failure to warn claim. Post-trial, the District Court denied H&B's Rule 50(b) motion for judgment as a matter of law.

---

[1] Patches initially asserted negligence, products liability, and breach of warranty claims; however, they amended their complaint to include only products liability.

[2] Some studies note that the average time needed for a pitcher to react to a batted ball is .4 seconds. Analysis of the sound recording from the game confirmed that the reaction time available to Brandon to turn away or defend himself was only .376 of a second.

3

**STANDARDS OF REVIEW**

¶11 We review an order granting or denying summary judgment de novo, using the same Montana Rule of Civil Procedure 56 criteria that the district court used. Summary judgment is not appropriate where any genuine issue of material fact exists. The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact. All reasonable inferences that may be drawn from the evidence should be drawn in favor of the party opposing summary judgment. *Wood v. Old Trapper Taxi*, 286 Mont. 18, 23-24, 952 P.2d 1375, 1378-79 (1997). We review de novo a district court's grant or denial of a motion for judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.

¶12 A district court's grant or denial of a motion in limine is reviewed for an abuse of discretion. *Malcolm v. Evenflo Co.*, 2009 MT 285, ¶ 29, 352 Mont. 325, 217 P.3d 514. We also review a district court's decision regarding jury instructions for an abuse of discretion. *Goles v. Neumann*, 2011 MT 11, ¶ 9, 359 Mont. 132, 247 P.3d 1089. A court abuses its discretion when it acts arbitrarily without conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *Malcolm*, ¶ 29.

**DISCUSSION**

¶13 Issue 1: *Did the District Court properly deny H&B's summary judgment motion on Patches' failure to warn claim?*

4

¶14    The District Court denied H&B's motion for summary judgment on the basis that failure to warn claims are available to bystanders, such as Brandon.[3]  H&B concedes that users and consumers may bring failure to warn claims, but argues it is entitled to summary judgment because failure to warn claims are not available to bystanders.[4]  In other words, H&B asserts that only the individual batting (actual user) and the individual who purchased the bat (actual consumer) can assert a failure to warn claim in this case. H&B's narrow interpretation of the terms user and consumer is contrary to the definition of the terms as contained in the *Restatement (Second) of Torts* § 402A[5] and is incongruent with this Court's products liability jurisprudence.

¶15    In *Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973), this Court adopted the theory of strict products liability contained in *Restatement (Second) of Torts* § 402A, which provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ." *Restatement (Second) of Torts* § 402A(1) (1965).  Although the drafters did not determine whether § 402A applied to bystanders,[6] they broadly defined the terms consumer and user.  For example, they defined the term consumer to "include not only those who in fact

---

[3]  Both parties and the District Court refer to Brandon as a bystander.

[4]  H&B relies on *Cromer v. Sherwin-Williams Co.*, 2006 U.S. Dist. LEXIS 46284 at *6 (D.S.C. July 7, 2006), which held a duty to warn bystanders of dangers associated with paint application was "unworkable."  The court did not cite to any authority in reaching its conclusion.

[5]  Section 402A is codified at § 27-1-719, MCA.

[6]  The drafters referred to "casual bystanders," such as "a passer-by injured by an exploding bottle [or] a pedestrian hit by an automobile."  *Restatement (Second) of Torts* § 402A cmt. o.

consume the product, but also those who prepare it for consumption . . . ." *Id.* at § 402A cmt. l. They reasoned that a consumer does not necessarily have to purchase the product. "He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser." *Id.* They also stated that the term user "includes those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes, as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee . . . ." *Id.*

¶16 This Court's products liability jurisprudence recognizes that a failure to warn claim may be brought by persons who are not actual purchasers or users of a product. For example, in *Streich v. Hilton-Davis*, defendant Hilton-Davis sold a chemical to Streich, a potato farmer, who applied the product to his seed potatoes. Streich later sold some of his seed potatoes to Williamson and Boorman. All three farmers suffered crop damage and sued Hilton-Davis in products liability for failure to warn. *Streich v. Hilton-Davis*, 214 Mont. 44, 47-48, 692 P.2d 440, 442 (1984). Although Williamson and Boorman had not purchased or used the chemical, they were treated no differently than Streich, and this Court affirmed the jury's damage award on their failure to warn claims. *Id.* at 57-58, 696 P.2d at 447; *see also Hagen v. Dow Chem. Co.*, 261 Mont. 487, 863 P.2d 413 (1993).

¶17 The realities of the game of baseball support the District Court's decision to submit Patches' failure to warn claim to the jury. The bat is an indispensible part of the game. The risk of harm accompanying the bat's use extends beyond the player who

6

holds the bat in his or her hands. A warning of the bat's risks to only the batter standing at the plate inadequately communicates the potential risk of harm posed by the bat's increased exit speed. In this context, all of the players, including Brandon, were users or consumers placed at risk by the increased exit speed caused by H&B's bat. H&B is subject to liability to all players in the game, including Brandon, for the physical harm caused by its bat's increased exit speed. We conclude the District Court did not err in denying H&B summary judgment and submitting Patches' failure to warn claim to the jury.

¶18    In addition, H&B argues that summary judgment is appropriate because (1) providing a warning to bystanders is "unworkable," and (2) Patches could not produce causation evidence establishing that they could have seen, read, and heeded a warning on the bat in a manner to prevent Brandon's death.

¶19    H&B's first argument fails because the "workability" of providing a warning is a jury question. *See Macrie v. SDS Biotech Corp.*, 630 A.2d 805 (N.J. Super. App. Div. 1993). In *Macrie*, employees of a produce broker were seriously injured after being exposed to a toxic fungicide while they unpacked produce that had been treated with the fungicide by a farmer who had sold the produce to their employer. The employees brought a failure to warn claim against the manufacturer of the fungicide. *Id*. at 807-08. As H&B does here, the manufacturer argued that it was not feasible, i.e., "workable," to warn the employees of the risks associated with the fungicide. *Id.* at 808. The *Macrie*

7

court rejected the manufacturer's argument and concluded that the feasibility of providing warnings is a jury question:

> [W]here a jury could find that plaintiff's foreseeable exposure [to the fungicide] would threaten them with serious physical harm, the jury could also determine that minimizing the danger warranted unusually strenuous efforts to provide them with warnings and instructions.

*Id.* at 810.

¶20 H&B's second argument incorrectly limits the scope of the warning by erroneously assuming that placing a warning directly on the bat is the only method to provide a warning. While placing a warning directly on a product is one method of warning, other methods of warning exist, including, but not limited to, issuing oral warnings and placing warnings in advertisements, posters, and media releases. *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 131 (9th Cir. 1968) ("[O]ther means of communication such as advertisements, posters, releases to be read and signed . . . or oral warnings . . . could easily have been undertaken . . . ."). Such warnings, if issued by H&B in this case, would have communicated to all players the potential risk of harm associated with H&B's bat's increased exit speed. H&B's false assumption fails to establish the absence of genuine issues of material fact. *Wood*, 286 Mont. at 23-24, 952 P.3d at 1379.

¶21 Because genuine issues of material fact exist regarding the scope of the warning and because the "workability" of providing a warning is a jury question, the District Court properly denied H&B summary judgment on its causation argument.

¶22    Issue 2: *Did the District Court properly deny H&B's Rule 50(b) motion for judgment as a matter of law?*

¶23    H&B argues the District Court erred in applying a "read and heed" inference when it denied H&B's Rule 50(b) motion for judgment as a matter of law because the adoption of an inference violates our holding in *Riley v. American Honda Motor Company*, 259 Mont. 128, 856 P.2d 196 (1993), and § 26-1-502, MCA.

¶24    Judgment as a matter of law is appropriate only when, considering all evidence and any legitimate inferences that might be drawn from the evidence in a light most favorable to the non-moving party, there is a complete lack of evidence that would justify submitting an issue to the jury. *Johnson*, ¶ 13.

¶25    In a failure to warn case, the plaintiff has the burden of proving (1) the product was sold in a defective condition due to the lack of or an inadequate warning, (2) the defect caused the injury, and (3) the defect is traceable to the defendant. *Wood*, 286 Mont. at 28, 952 P.2d at 1382. The policy underlying products liability—protecting the consuming public by requiring manufacturers to bear the burden of injuries caused by defective products—requires courts to apply a flexible standard of proof. *Brandenburger*, 162 Mont. at 517, 513 P.2d at 275. The nature and quality of evidence used in products liability cases to demonstrate causation varies, and the death or inability of the plaintiff to testify is one of the factors influencing the requisite standard of proof. *Id.* at 518, 513 P.2d at 275.

¶26 As an initial matter, we decline to address H&B's § 26-1-502, MCA, inference upon inference argument because, as we discussed in Issue 1, it is based upon H&B's incorrect assumption that the only method to provide a warning is directly on the bat.

¶27 H&B disregards our prior approval of a flexible standard of proof in products liability cases and argues the "rule" of causation we adopted in *Riley* is paramount. There, Riley was injured in a motorcycle accident and sued Honda, asserting claims of manufacturing and design defect and failure to warn. The district court dismissed Riley's failure to warn claim, and he appealed. *Riley*, 259 Mont. at 130, 856 P.2d at 197. On appeal, Riley argued that his testimony relating to his respect for machinery and concern for safety was sufficient evidence from which to infer that he would have operated the motorcycle differently had he been warned of its propensity to wobble. The majority concluded that plaintiffs could satisfy the causation element by presenting evidence that a warning would have altered their conduct, but noted Riley had not done so. *Id.* at 132-33, 856 P.2d at 198-99. The dissent in *Riley* advocated for the adoption of a rebuttable presumption, reasoning that requiring a plaintiff to testify about whether he or she would have read and heeded a warning was speculative and self-serving and impossible if the plaintiff died. *Id.* at 136-37, 856 P.2d at 201 (McDonough, J., dissenting).

¶28 Contrary to H&B's argument that *Riley* developed *the* "rule" of causation in failure to warn cases, our decision in *Riley* was not intended to limit the flexible standard of proof in products liability cases. Subsequent cases citing *Riley* illustrate that it provides only one method for proving causation. *See Emery v. Federated Foods, Inc.*,

10

262 Mont. 83, 92, 863 P.2d 426, 433 (1993); *Wood*, 286 Mont. at 30, 952 P.2d at 1383.

For example, in *Emery*, we noted causation "*can be* satisfied by evidence indicating that a

warning would have altered the plaintiff's use of the product or prompted the plaintiff to

take precautions to avoid the injury." *Emery*, 262 Mont. at 92, 863 P.2d at 433 (emphasis

added).

¶29    Further, *Riley* is distinguishable from Patches' situation because Brandon is

deceased.  And, as predicted by the dissent in *Riley*, it would be unfair and unjust to apply

*Riley's* self-serving "magic-words" requirement here.  The District Court recognized this

and, relying on *Schutte v. Celotex Corporation*, 492 N.W.2d 773 (Mich. App. 1992),

properly allowed the jury to infer that Patches would have heeded a warning had one

been given.  Although *Schutte* is a negligence case involving failure to warn, we find that

its rationale for permitting an inference is applicable to products liability failure to warn

claims:

> In certain situations . . . where the consequences . . . are severe, the lack of
> warning is undisputed, and the person . . .is dead, the jury may be permitted
> to infer that a warning would have been heeded and that the failure to warn
> was a proximate cause of the injury.  Not only would it be virtually
> impossible to prove what the decedent would have done had he been
> warned, but, as a practical matter, nothing more is added in this case by
> having a witness merely state that, had the danger been known. . . he would
> have acted to avoid the danger.

*Schutte*, 492 N.W.2d at 777.

¶30    The District Court properly applied a flexible standard of proof and acted in

accordance with our precedent, including *Riley*.  H&B's Rule 50(b) motion was properly

11

denied because there was not a complete lack of evidence to justify withholding the issue from the jury. Testimony that Brandon followed guidelines and that his teammates quit using aluminum bats and switched to wood bats after his death warranted submitting Patches' failure to warn claim to the jury.

¶31 Issue 3: *Did the District Court properly grant Patches' motion in limine regarding H&B's assumption of the risk defense?*

¶32 The District Court concluded Brandon's voluntary participation in the game did not make assumption of the risk applicable. H&B argues that because Brandon had been hit by batted balls before, he knew he could be hit and, therefore, assumed the risk when he continued playing baseball.

¶33 Section 27-1-719(5)(a), MCA, permits a manufacturer to assert the affirmative defense of assumption of the risk where "[t]he user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it." We clarified the assumption of the risk defense in *Lutz v. National Crane Corporation*, where we held the defense is inapplicable as a matter of law without evidence the victim actually knew he or she would suffer serious injury or death, and, knowing that, the victim voluntarily exposed himself or herself to the danger. *Lutz v. Natl. Crane Corp.*, 267 Mont. 368, 379-80, 884 P.2d 455, 461-62 (1994). What the victim actually knew is evaluated using a subjective standard. *Id.*

12

¶34 Assumption of the risk was not applicable here because there is no evidence that Brandon actually knew he would be seriously injured or killed when pitching to a batter using one of H&B's model CB-13 aluminum bats. In other words, H&B failed to show that Brandon was aware of the enhanced risks associated with the model CB-13 aluminum bat, and, knowing that, he voluntarily proceeded to pitch to a batter using that bat. The District Court did not abuse its discretion in granting Patches' motion in limine.

¶35 Issue 4: *Did the District Court properly instruct the jury?*

¶36 The District Court instructed the jury on failure to warn as follows:

**Instruction No. 15**

A product may cause injury because of inadequate warning. In order to recover for such injury, the Plaintiff must prove:

First, that the Defendant manufactured or sold the product in a defective condition because of a failure to adequately warn of those dangers which would not be readily recognized by a *bystander*.

Second, that the failure to provide adequate warning caused injury to the Plaintiff.

(Emphasis added.) The District Court substituted "bystander" for "ordinary user of the product" based upon Montana Pattern Jury Instruction (Second) § 7.00, which provides that "in cases of injuries to bystanders, the court should modify the 'user' language accordingly."

¶37 H&B argues the substitution of "bystander" is erroneous and, relying on *Riley*, asserts the court erred in refusing to adopt H&B's proposed final sentence to Instruction No. 15: "Causation for a failure to warn claim requires proof that a warning would have

13

altered the use of a product or prompted precautions to avoid the injury." H&B also argues a new trial is required because Instruction No. 15 was inconsistent with the verdict form, which asked: "Did the Defendant fail to adequately warn of those dangers which would not be readily recognized by the ordinary *user* of the product?" (Emphasis added.)

¶38 "Jury instructions must fully and fairly inform the jury of the law applicable to the case." *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 33, 357 Mont. 293, 239 P.3d 904. Plain, clear, concise, and brief jury instructions promote verdicts consistent with the evidence and the law. *Id.* The party challenging a jury instruction must demonstrate prejudice. We will not find prejudice where the instructions state the applicable law of the case. *McAlpine v. Rhone-Poulenc Ag Co.*, 2000 MT 383, ¶ 16, 304 Mont. 31, 16 P.3d 1054.

¶39 As a whole, the instructions correctly instructed the jury on the law applicable to this case. Although the District Court replaced "user" with "bystander," Instruction No. 15 included a second requirement that "the failure to provide adequate warning caused injury to the Plaintiff," and the verdict form focused on the user of the product, rather than a bystander. The jury obviously determined Brandon was a user of the product. As noted in Issue 2, *Riley* is not the applicable rule of causation here. We find no prejudice in the court's refusal of H&B's *Riley*-based proposed addition to Instruction No. 15. Any inconsistency between the verdict form and Instruction No. 15 is harmless because it did not prejudice H&B's substantial rights. *See State v. Schmidt*, 2009 MT 450, ¶ 26, 354 Mont. 280, 224 P.3d 618.

14

¶40    Issue 5: *Should the verdict be set aside and a new trial granted?*

¶41    Relying on § 25-11-102, MCA, H&B argues it is entitled to a new trial because there was not sufficient causation evidence presented to justify the verdict and an error in law occurred at trial when the court rejected H&B's *Riley* argument and adopted an inference. H&B's current argument re-hashes its arguments raised in Issues 1 and 2. We decline to discuss these arguments any further.

## CONCLUSION

¶42    The District Court properly denied H&B's motion for summary judgment on Patches' failure to warn claim because H&B is subject to liability to all players, including Brandon, for the physical harm caused by its bat's increased exit speed, and genuine issues of material fact existed regarding the causation element of Patches' claim. *Riley* is not applicable here, as Brandon is deceased. The District Court appropriately applied a flexible standard of proof in denying H&B Rule 50(b) relief. Further, the District Court correctly prohibited H&B from arguing Brandon assumed the risk and properly instructed the jury on the applicable Montana law. A new trial is not warranted.

¶43    We affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER

15

/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶44 I concur with the Court's determination under Issue 1 that Patches stated a legally valid claim. H&B argues that § 27-1-719, MCA, limits product liability claims to "users and consumers" of the product, and does not extend to bystanders. Because, as the Court reasons, "all of the players, including Brandon, were users or consumers" in the context of a baseball game, Opinion, ¶ 17, the statute is facially broad enough to encompass Patches' claim under strict products liability law.

¶45 While I concur that Patches have stated a legally valid claim, I remain troubled by the evidentiary basis for the failure to warn claim. Patches did not articulate specifically what a warning should have contained and what message should have been given. Statements to the effect that the bat would hit balls at unusually fast speeds or unusually far distances are the kind of messages accompanying usual product advertising and are precisely the qualities in a bat which baseball teams and players seek out. Neither did Patches articulate specifically how a warning would have changed the result here, in other words, how the failure to warn caused this accident. During oral argument before

16

this Court, when Patches' counsel was asked to articulate Patches' theory of causation—or how a warning would have prevented the accident—he was vague, offering only what the jury may have concluded.

¶46     The closing argument Patches made to the jury seemed to reflect the stretch which they asked the jury to make:

> They don't have warnings on these bats.  There's nothing said on these bats about what these bats can do.  And that your child, whether he's 15, 16, 17, 18, 19 -- if your child is playing and he's a pitcher, he could be killed, as what happened here July 25, 2003.
>
> .   .   .
>
>     Now I ask you this -- I ask you-all this:  If you had a child 17 or 18 years old and he wanted to be a pitcher and the bat that the kid was bringing up to the plate warned -- warned -- that this bat could kill -- Mr. [a]nd Mrs. Patch didn't have the benefit of any warning.

Patches' apparent theory, as articulated in closing argument, was that H&B should have advertised that its bat "could kill," or that players engaged in the game of baseball "could be killed" if their bat was used.  As alluded to in testimony, the inference which Patches asked the jury to draw in order to establish causation was that, following the publishing of a warning "that this bat could kill," they as parents would have, and could have, prohibited Brandon from playing baseball that day.

¶47     As the Court notes, "the 'workability' of providing a warning is a jury question." Opinion, ¶¶ 19, 21.  There is no doubt that the jury in this case was given a difficult task. Because the law gives to the jury the duty of determining whether the plaintiff presented

17

a viable theory of warning and causation in this case involving a baseball bat, I defer to the jury's judgment and likewise affirm their verdict.

/S/ JIM RICE