DA 11-0049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 43

PATTERSON ENTERPRISES, INC.,

   Plaintiff and Appellant,

 v.

ARCHIE JOHNSON, d/b/a ARCHIE
JOHNSON CONTRACTING,

   Defendant and Appellee.


APPEAL FROM:  District Court of the Fourth Judicial District,
        In and For the County of Missoula, Cause No. DV-07-1212
        Honorable Ed McLean and Honorable John Warner, Presiding Judges


COUNSEL OF RECORD:

   For Appellant:

      Christian T. Nygren (argued), P. Brad Condra (argued), Milodragovich,
      Dale, Steinbrenner & Nygren, P.C., Missoula, Montana

   For Appellee:

      Nicholas J. Pagnotta (argued), Williams Law Firm, P.C., Missoula,
      Montana

      Bruce M. Feichtinger, Whittington Von Sternberg, Houston, Texas


           Argued: December 12, 2011
         Submitted: December 13, 2011
          Decided: February 24, 2012


Filed:

     _____
           Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Patterson Enterprises, Inc. (Patterson) appeals the judgment of the District Court for the Fourth Judicial District, Missoula County, denying Patterson's motion for summary judgment on its strict liability claim. We affirm.

¶2 Patterson raises two issues on appeal:

¶3 1. Whether the District Court erred when it permitted the defense of assumption of the risk to go to the jury.

¶4 2. If this Court determines it was proper to instruct the jury regarding assumption of the risk, whether the District Court abused its discretion in failing to instruct the jury regarding the subjective knowledge requirement set forth in *Lutz v. National Crane Corp.*, 267 Mont. 368, 884 P.2d 455 (1994).

## Factual and Procedural Background

¶5 In the fall of 2006, Patterson was hired by Doug Ferraro and Dan Vanderzwaag to construct a road on property owned by Ferraro and Vanderzwaag located approximately 20 miles west of Missoula. Because the road was to be constructed in mountainous terrain, it was determined that a significant amount of blasting would be required. Patterson did not have any personnel trained or knowledgeable in blasting techniques, so he hired Archie Johnson Contracting (AJC) to perform all necessary blasting on the project.

¶6 On January 2, 2007, Patterson and AJC entered into an agreement for the blasting on the project which they referred to as the Nine Mile Project. This agreement required AJC to drill and blast various small rock outcroppings as well as a main cliff section

which was approximately 400 feet in length. Adam Pummill was the project superintendent for Patterson as well as the excavator operator. His job was to work with AJC's crews to remove blasted material as the project progressed. Despite his experience building roads and performing general excavation work, Pummill did not have any background in drilling, blasting or geology. Thus, AJC was in charge of the blasting while Patterson was in charge of the excavating.

¶7 Testimony at trial indicated the following standard sequence of events during the project. Patterson would use its equipment to clear or build a flat pad for AJC's drilling equipment to sit on. AJC would then place its drilling equipment on the pad, drill a series of holes in the rock, and fill the holes with explosives. Before detonating the explosives, AJC would clear the area of personnel and equipment. The explosion was intended to fracture the rock sufficiently for Patterson to use its excavators to remove the blasted material. AJC and Patterson repeated this basic process numerous times as they worked to construct the road.

¶8 On February 26, 2007, AJC detonated 503 pounds of explosives in 46 holes along 500 yards of rock. This blast created a rock overhang that caused both Patterson's and AJC's crews to be concerned. On the evening of February 28, 2007, Archie Johnson and the owners of the project met on site to discuss how to deal with the overhang. One idea was for AJC's crews to come in from above using ropes and drills so that they could safely get to the overhang and bring it down without having to be underneath it. Since this would take several days, the owners were opposed to the idea.

3

¶9     Trial testimony differed on whether AJC continued blasting in the area of the overhang to try to bring it down. However, Pummill testified that when he arrived for work on the morning of March 1, 2007, it was apparent to him that the overhang had been altered. Pummill moved his excavator into an area near the overhang and began excavating the blasted rock. AJC's crew arrived sometime later and checked on Pummill's progress. Henry Bentley, AJC's driller, did not advise or warn Pummill that the overhang was still dangerous because, according to Bentley, Pummill already knew that it was dangerous. When Bentley stopped by the area again more than an hour later, he noticed that Pummill was working directly below the overhang, so he signaled for Pummill to exit the excavator. Almost immediately after Pummill exited the excavator, an entire section of rock above the excavator collapsed crushing it. Pummill was not injured.

¶10    AJC denied liability for the accident, consequently Patterson filed suit on September 11, 2007. In its second amended complaint, Patterson asserted claims of negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and strict liability. AJC denied all of the allegations and asserted various affirmative defenses including contributory negligence and assumption of the risk. AJC also asserted a counterclaim for breach of contract for money still owed to AJC for the work AJC performed on the project.

¶11    Patterson filed a Motion for Summary Judgment on November 25, 2008, arguing that blasting constitutes an abnormally dangerous activity thereby subjecting AJC to strict liability for Patterson's damages. Thereafter, AJC filed a cross-motion for partial

4

summary judgment on the grounds that (1) the case should not be governed by strict liability because the damages claimed by Patterson did not occur until days after any blasting done by AJC and after Patterson's operator had excavated under the overhang, (2) if the court found that the case was governed by negligence, then Patterson was contributorily negligent as a matter of law, and (3) if the court found that the case was governed by strict liability, then Patterson assumed the risk as a matter of law.

¶12 The District Court entered an Opinion and Order on October 5, 2009, finding that blasting is inherently an abnormally dangerous activity subjecting it to strict liability. However, the court pointed out that, in this case, the damage to the excavator occurred more than 24 hours after the blasting process had occurred and after Pummill spent at least three hours removing rock from underneath the overhang. The court stated that "someone who engages in an abnormally dangerous activity does not have the legal duty to in essence 'insure' damages for any and all harm that may result at some time in the future following the performance of the abnormally dangerous activity . . . ." Thus, the court determined that when AJC's strict liability started and stopped were factual questions for the jury's determination.

¶13 The court further noted that this case is primarily an ordinary negligence action and that there was "plenty of evidence upon which the jury could find the parties contributorally [sic] negligent at trial." In addition, the court stated that "the causal question under [Patterson's] claim of strict liability under the abnormally dangerous activity legal theory is a question for the jury to determine because of the intervening work of the excavator more than 24 hours after the blasting activities occurred." Based

5

on these findings, the court denied Patterson's motion for summary judgment. The court also denied AJC's motion for partial summary judgment stating that there were questions of fact regarding AJC's affirmative defenses of contributory negligence and assumption of the risk.

¶14 Trial of this case began on December 13, 2010. During trial, Patterson filed a supplemental trial brief arguing that the assumption of risk defense should not be submitted to the jury as a defense to Patterson's strict liability claims. Patterson argued in its brief that AJC failed to satisfy the elements of the defense as enunciated in *Lutz*, 267 Mont. at 377, 884 P.2d at 460. In addition, during the settling of the jury instructions, Patterson objected to the wording of the assumption of the risk instruction on the basis that it failed to properly instruct the jury regarding the subjective knowledge standard set forth in *Lutz*, 267 Mont. at 378, 884 P.2d at 461.

¶15 Following the close of evidence, the court determined that it would submit the case to the jury as a strict liability case, and that it would permit the jury to be instructed on the assumption of risk defense. The court also submitted AJC's counterclaim for breach of contract to the jury.

¶16 On December 17, 2010, the jury returned a verdict finding that AJC's blasting caused the damages sustained by Patterson and that Patterson and its employees assumed the risk of harm. The jury allocated 51% of the fault to AJC and 49% to Patterson, and awarded damages to Patterson in the amount of $50,000. The jury also returned a verdict in favor of AJC on its breach of contract claim and awarded damages to AJC in the amount of $19,255.16.

¶17 Patterson appeals the District Court's decision to allow the defense of assumption of the risk to go to the jury as well as the court's failure to instruct the jury regarding the subjective knowledge requirement set forth in *Lutz*.

**Issue 1.**

¶18 *Whether the District Court erred when it permitted the defense of assumption of the risk to go to the jury.*

¶19 Patterson contends on appeal that the District Court incorrectly concluded that the defense of assumption of the risk was applicable under the facts of this case, thus the court erred in permitting that defense to go to the jury. Patterson argues that the jury's focus should have been on the dangerous condition, not on the conduct of the injured party. Thus, Patterson maintains that in this case, allowing the jury to focus on Pummill's conduct, in the face of an obviously dangerous condition which he lacked the knowledge to assess, impermissibly inserted questions of contributory negligence into a purely strict liability case.

¶20 AJC argues on the other hand that to hold it strictly liable for blasting activities that occurred days before the incident at issue here, yet find that Patterson and its employees only assumed the risk of harm if the stringent standards set out in *Lutz* are met, would be fundamentally unfair and contrary to the intent of the *Restatement (Second) of Torts*. AJC contends that there was sufficient evidence presented to the jury to show that Pummill knew that overhangs are dangerous and unstable, and that it was unsafe to place the excavator under the overhang. AJC further contends that there was sufficient evidence presented to the jury that Pummill knew that digging underneath the

7

overhang would undercut support for the overhang, yet Pummill did so resulting in the overhang falling on the excavator.

¶21 Whether the trial court erred in permitting the defense of assumption of the risk to be submitted to the jury is a question of law which we review de novo. *Jacobsen v. Allstate Ins. Co.,* 2009 MT 248, ¶¶ 17, 26, 351 Mont. 464, 215 P.3d 649 (citing *State v. Mackrill*, 2008 MT 297, ¶ 37, 345 Mont. 469, 191 P.3d 451).

¶22 Assumption of the risk is a statutory affirmative defense in Montana under § 27-1-719(5), MCA. This statute provides that the defense may be asserted if the "user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it." Section 27-1-719(5)(a), MCA. In addition, assumption of the risk "must be applied in accordance with the principles of comparative fault set forth in 27-1-702 and 27-1-705." Section 27-1-719(6), MCA.

¶23 In the instant case, Patterson points out that Montana's leading case on the assumption of risk defense is *Lutz*. Thus, Patterson urges this Court to extend the *Lutz* standard applicable in product liability cases to those cases involving allegations of abnormally dangerous activities. We decline to do so under the facts in this case.

¶24 Lutz was killed when the crane cable he was using to retrieve drilling pipe that had spilled onto the highway from a semi-trailer contacted a power line. Before lifting the pipe, Lutz and his supervisor, who were both aware of the overhead power lines in the area and that the crane cable with which they were working was uninsulated, marked off the pipes that they did not believe were safe to move. Lutz's supervisor operated the

crane while Lutz hooked metal chains attached to the uninsulated crane cable around the ends of the pipe and guided the pipes to a waiting semi-trailer. At one point the crane cable came into contact with a power line thereby electrocuting Lutz. *Lutz*, 267 Mont. at 372, 884 P.2d at 457.

¶25    On behalf of Lutz's estate, Lutz's widow, Lori, sued National Crane Corporation (National) on the theory of strict liability in tort, alleging that the crane was defectively designed and unreasonably dangerous because it lacked an insulated link. National raised the statutory affirmative defenses of assumption of risk and misuse. *Lutz*, 267 Mont. at 372-73, 884 P.2d at 457.

¶26    The jury returned a verdict in favor of Lori, but reduced the amount of her award by 20 percent, the percentage of responsibility the jury allocated to Lutz. National appealed from the verdict and judgment while Lori cross-appealed on the issues of assumption of risk and misuse, seeking to recover the jury's full determination of damages. *Lutz*, 267 Mont. at 373, 884 P.2d at 458.

¶27    We stated in *Lutz* that assumption of the risk in a product liability case is analyzed under a subjective standard rather than under the objective "reasonable person" standard, and we set forth that standard as

> what the particular plaintiff sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. . . . If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may be found that his conduct is contributory [comparative] negligence because it does not conform to the community standard of the reasonable man.

9

*Lutz*, 267 Mont. at 378, 884 P.2d at 461 (citing *Krueger v. General Motors Corp.*, 240 Mont. 266, 276, 783 P.2d 1340, 1347 (1989)).

¶28 Despite the fact that there was a known objective hazard in *Lutz*; that Lutz recognized the hazards associated with operating a crane next to live power lines; and that Lutz knew he could be killed if the cable came into contact with those power lines, this Court determined that the assumption of the risk defense was not available in that case because the contact between the cable and the power lines was inadvertent. It was not a voluntary act by either the crane operator or Lutz. *Lutz*, 267 Mont. at 380, 884 P.2d at 462. We ruled in *Lutz* that the assumption of the risk defense in a product liability case is inapplicable as a matter of law without evidence that the victim actually knew that serious injury or death *would* result, and knowing that, the victim voluntarily exposed himself to a known danger. *Lutz*, 267 Mont. at 379-80, 884 P.2d at 461-62.

¶29 Patterson's theory in the case *sub judice* was simply that AJC created the dangerous condition and should be held strictly liable for all damages that resulted therefrom. Patterson maintains that AJC's employees were the blasting and rock experts on the project and, as such, they recognized the danger. Pummill on the other hand was not an expert in blasting or geology, hence he had to rely upon AJC's employees to determine whether the situation was safe. Patterson maintains that while Pummill may have understood that there was some danger, he did not understand that taking the excavator into the area would result in its destruction. According to Patterson, this falls short of the subjective knowledge requirement set forth in *Lutz*.

10

¶30 We decline to apply the subjective knowledge requirement of *Lutz* to the facts in this case because unlike in *Lutz*, where the contact with the power line was inadvertent, Pummill's actions in the instant case of excavating beneath the overhang were intentional. Furthermore, Pummill knew the dangers associated with excavating there.

¶31 Patterson also relies on our recent decision in *Patch v. Hillerich & Bradsby Co.*, 2011 MT 175, 361 Mont. 241, 257 P.3d 383, to support its claim that the assumption of risk defense should not have gone to the jury.

¶32 In *Patch*, eighteen-year-old Brandon Patch was struck in the head by a batted ball during an American Legion baseball game. The ball was hit by a player using an aluminum bat manufactured by Hillerich & Bradsby Co. (H&B). Brandon died from his injuries. His parents and his estate sued H&B in strict products liability asserting manufacturing and design defect, and failure to warn claims. Plaintiffs claimed the bat was in a defective condition because of the enhanced risks associated with its use. The aluminum bat increased the velocity of a batted ball when struck by the bat thus decreasing infielders' reaction times, and resulting in a greater number of high energy batted balls in the infield. *Patch*, ¶¶ 8-9.

¶33 Before trial, the District Court granted H&B's motion for summary judgment on Plaintiff's manufacturing defect claim, but denied summary judgment on Plaintiff's design defect and failure to warn claims. The court granted Plaintiff's motion in limine excluding H&B's assumption of the risk defense. *Patch*, ¶ 10. The court concluded that Brandon's voluntary participation in the game did not make assumption of the risk applicable. *Patch*, ¶ 32.

11

¶34 At trial, Plaintiff's design defect and failure to warn claims were submitted to the jury. The jury concluded that the bat was not designed defectively, but that it was in a defective condition due to H&B's failure to warn of the enhanced risks associated with its use. The jury awarded Plaintiffs $850,000 on their failure to warn claim. *Patch*, ¶ 10.

¶35 On appeal, we examined both § 27-1-719(5)(a), MCA, the assumption of the risk statute, and our holding in *Lutz*. We concluded in *Patch*, that an assumption of the risk defense was not applicable in that case because there was no evidence that Brandon actually knew that he would be seriously injured or killed while pitching to a batter using one of H&B's aluminum bats. *Patch*, ¶¶ 33-34.

¶36 We hold that *Patch* is distinguishable from the instant case because the evidence here indicates that, unlike Brandon Patch who was unaware of the danger from balls hit from H&B's aluminum bat, Pummill was aware of the danger from the overhang.

¶37 Pummill testified at trial as follows.

> Q. [Plaintiff's counsel]. Okay, and did any of the blasters ever express any concern to you about this overhang, that we know, now, eventually, came down on your excavator?
> A. [Pummill]. They did, yes.
> Q. What did they tell you?
> A. They – we discussed it, and they felt that it was a very hazardous condition, that was presented, also, up there, and I expressed my concerns that I, also, felt it was very hazardous.
> 　　　　.　　.　　.
> Q. Okay, and could you reach this large overhang? When you crawled your excavator on top of that ramp, and extended the arm, as high as you could, could you reach the overhang with the excavator?
> A. No, I couldn't completely reach it, and to be able to do that, it would have been very dangerous because the only position, that I could have been in, would have been right underneath it, to be able to reach it, and do anything with it with the machine.

¶38     Thus, rather than apply *Lutz* in this case, we will follow our holding in *Matkovic v. Shell Oil Co.*, 218 Mont. 156, 707 P.2d 2 (1985). In response to certified questions posed to this Court by the United States District Court, for the District of Montana, we stated in *Matkovic* that we saw no reason to apply a different standard to strict liability which arises as the result of conducting an abnormally dangerous activity than to strict liability which arises in the case of a defective product. Consequently, in *Matkovic*, we extended the defense of assumption of the risk to strict liability based on abnormally dangerous activities. *Matkovic*, 218 Mont. at 160, 707 P.2d at 4. In addition, we stated in *Matkovic* that while assumption of the risk is a defense to both strict products liability and strict liability for abnormally dangerous activities, that defense may be used only in rare circumstances. *Matkovic*, 218 Mont. at 160, 707 P.2d at 4 (citing *Zahrte v. Sturm, Ruger & Co.*, 203 Mont. 90, 661 P.2d 17 (1983)).

¶39     AJC contends that Pummill, by placing his excavator underneath the overhang and digging out from underneath that overhang, voluntarily participated in the abnormally dangerous activity in this case. Hence, in evaluating whether Pummill assumed the risk of harm, AJC maintains that the focus is properly on Pummill's actions in voluntarily participating in an abnormally dangerous activity that his employer, Patterson, was hired to do. On that basis, AJC urges this Court to apply the *Restatement (Second) of Torts* § 523 (1977), which provides:

> Assumption of Risk
> The plaintiff's assumption of the risk of harm from an abnormally dangerous activity bars his recovery for the harm.

In particular, AJC urges us to adopt comment d to § 523 which provides:

The risk is commonly assumed by one who takes part in the activity himself, as a servant, an independent contractor, a member of a group carrying on a joint enterprise or as the employer of an independent contractor hired to carry on the activity or to do work that must necessarily involve it. Thus a plaintiff who accepts employment driving a tank truck full of nitroglycerin, with knowledge of the danger must be taken to assume the risk when he is injured by an explosion.

¶40 We conclude that in this case, the District Court reached the right result, but for the wrong reason. In that respect, although there was argument that § 523 was not effectively raised below, we conclude that comment d of § 523 currently sets forth the law that applies to these types of cases. Here, Patterson and AJC entered into a joint enterprise regarding an abnormally dangerous activity. Under the *Restatement (Second) of Torts* § 523 (cmt. d) Patterson and his employees assumed the risk of harm.

¶41 Accordingly, we hold that the District Court did not err when it permitted the defense of assumption of the risk to go to the jury.

**Issue 2.**

¶42 *Whether the District Court abused its discretion in failing to instruct the jury regarding the subjective knowledge requirement set forth in Lutz.*

¶43 During the settling of the jury instructions, Patterson's counsel renewed his objection to allowing the assumption of the risk defense to go the jury. Counsel also objected to the specific wording of the proposed jury instruction. The District Court overruled counsel's objections and instructed the jury as follows:

Assumption of risk is a defense to plaintiff's claims. In order to establish assumption of risk, the defendant must prove:
First, that the condition which caused damage was open and obvious or the plaintiff's employee discovered such condition;

14

Second, that even though the condition was open and obvious, or the plaintiff's employee discovered the condition, the plaintiff unreasonably proceeded in the face of the danger; and

Third, that the plaintiff was damaged as a result of its employee proceeding in the face of the danger.

Assumption of risk by the plaintiff's employee does not bar its recovery unless its responsibility for the damage is greater than the defendant's. However, any damages you award will be reduced by the Court according to the percentage of plaintiff's responsibility as determined by you.

¶44 Patterson argues on appeal that the District Court improperly instructed the jury regarding the assumption of risk defense. The court determined that § 27-1-719(5), MCA, had been enacted or substantively amended subsequent to this Court's decision in *Lutz* and thus the plain language of the statute controlled. As a result, the court did not instruct the jury regarding the subjective knowledge requirement set forth in *Lutz*. Patterson maintains that the amendments to § 27-1-719(5), MCA, were not substantive and did not alter the basic analytical framework set forth in *Lutz*. Consequently, Patterson contends that the District Court erred in determining that § 27-1-719(5), MCA, superseded the guidance in *Lutz*.

¶45 AJC contends that the instruction given by the District Court on assumption of risk substantially tracked the language in Montana Pattern Instruction (MPI) Second 7.06 and correctly states the law on assumption of the risk in Montana. In this case, the court modified the instruction to refer to a condition rather than a defective product.

¶46 MPI2d 7.06 was written by the Montana Supreme Court Commission on Civil Jury Instruction Guidelines (the Commission) in 2003. In promulgating MPI2d 7.06, the Commission listed as its source § 27-1-719(5)(a), MCA, and noted that it "considered the

15

language of *Lutz v. National Crane Corp.,* (1994), 267 Mont. 368, 884 P.2d 455, on the subject of assumption of risk in drafting this instruction." Although the Commission did consider *Lutz*, it did not adopt in its model instruction the language regarding subjective knowledge from *Lutz* that Patterson urged the District Court to include in the jury instruction at issue in this case.

¶47 A district court's decision regarding jury instructions is reviewed for an abuse of discretion. *Goles v. Neumann*, 2011 MT 11, ¶ 9, 359 Mont. 132, 247 P.3d 1089 (citing *State v. Christiansen*, 2010 MT 197, ¶ 7, 357 Mont. 379, 239 P.3d 949). Although a district court's discretion is broad, it is restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. Thus, to constitute reversible error, the instructions must prejudicially affect the defendant's substantial rights. *Goles*, ¶ 9. "The purpose of jury instructions is to guarantee decisions consistent with the evidence and the law, which can be accomplished when the instructions are as plain, clear, concise, and brief as possible." *Goles*, ¶ 9.

¶48 We find no prejudice in the court's refusal to include the language proposed by Patterson in this jury instruction.

¶49 Accordingly, we hold that the District Court did not abuse its discretion in failing to instruct the jury regarding the subjective knowledge requirement set forth in *Lutz*.

¶50 As for the Dissent, *Lutz* and § 27-1-719(5), MCA, both deal with strict products liability, not with abnormally dangerous activities. While Patterson and the Dissent would have us apply legal principles governing the former to resolve the latter, we conclude that is unwarranted here. Foremost, no defective *product* is involved in the

16

instant case. Rather, this case concerns an abnormally dangerous *activity* involving two participants. Accordingly, we have determined that, on the facts of the instant case, *Restatement (Second) of Torts* § 523 (cmt. d) best expresses the legal principles that should govern.

¶51 Applying those principles and based on the record before us, we are not persuaded that Pummill failed to recognize the danger of operating his excavator under the rock overhang as the Dissent contends. Dissent, ¶ 57. Pummill was, after all, an experienced contractor—indeed, he was in charge of the construction project for his employer, as far as the excavation went. He was engaged with AJC in a road construction project that involved blasting and excavating rock. The blasters had expressed concern to Pummill about the rock overhang that eventually fell on the excavator; they told him "it was a very hazardous" condition and Pummill testified that he "also, felt it was very hazardous." In fact, Pummill testified that placing the excavator "right underneath" the overhang would have been "very dangerous."

¶52 We are also not persuaded that AJC knew Pummill was operating the excavator underneath the overhang as the Dissent contends. Dissent, ¶ 57 . When Bentley, AJC's driller, first checked on Pummill's progress on the morning of the accident, Pummill was working to one side of the overhang. However, when Bentley returned some time later, he noticed that Pummill had moved the excavator directly below the overhang and that is when Bentley signaled for Pummill to exit the excavator. Opinion, ¶ 9.

¶53 Under these circumstances, we are satisfied that Pummill possessed the subjective knowledge of the danger that the overhang posed. The trial evidence showed that, in the

face of this knowledge, Pummill operated his excavator "right underneath" the "very dangerous" rock overhang that he, himself, felt was "very hazardous." In so doing, it is clear that Pummill assumed the very risk that what *could* happen, *did* happen. The overhang collapsed while Pummill was excavating underneath it. The District Court correctly instructed the jury, and the fact-finder's decision was fully supported by the evidence before it.

¶54 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JIM RICE

Justice Michael E Wheat dissents.

¶55 The District Court correctly concluded that blasting is an abnormally dangerous activity, thus subjecting Archie Johnson Contracting (AJC) to strict liability. Strict liability arising from an abnormally dangerous activity, such as blasting, is confined to the damages that arise from the abnormal danger of the activity itself. *Restatement (Second) of Torts* § 519 cmt. e (1977). One obvious danger associated with blasting is the chance that falling rock will cause injury to a person or property, which is exactly what happened here.

¶56    However, I believe the District Court erred when it allowed the assumption of the risk defense to go to the jury. To establish the assumption of the risk defense, the defendant must establish (1) that the injured party discovered the defect, or the defect was open and obvious; and (2) that the injured party unreasonably made use of the product (or condition). Section 27-1-719(5), MCA. This Court applied these standards to strict liability for an abnormally dangerous activity in *Lutz v. National Crane Corp.*, 267 Mont. 368, 884 P.2d 455 (1994). As to the first element of § 27-1-719(5), MCA, a defendant must prove that the victim knew that serious injury or death *would* result, and knowing that, the victim voluntarily exposed himself to a known danger. *Lutz*, 267 Mont. at 378, 884 P.2d at 461. This Court further noted that in the context of strict liability, allowing the assumption of the risk defense to be submitted to the jury under any other set of facts would "only enlarge the concept of contributory negligence to consume the separate defense of assumption of the risk[.]" *Lutz*, 267 Mont. at 380, 884 P.2d at 462. As to the second element, this Court found that if a given use of equipment in a particular location is reasonably foreseeable, then the use is reasonable as a matter of law. *Lutz*, 267 Mont. at 379-80, 884 P.2d at 462.

¶57    Here, as in *Lutz*, the elements of § 27-1-719(5), MCA, were not met. Regarding the first element, Pummill did not fully understand the danger posed by the overhang; he was not a geologist, he had no background in blasting, and he did not have the requisite experience to assess the danger of the overhang. As to the second element, AJC knew it was possible that the overhang might fall, and knew Pummill was operating an excavator

19

under the overhang. Accordingly, Pummill's operation of the excavator beneath the overhang was reasonable as a matter of law.

¶58 Based on these facts, I believe that the District Court would have found the assumption of the risk defense inapplicable had it applied this Court's holding in *Lutz*. In this case, Patterson could not have assumed the risk that the excavator would be destroyed because (1) Pummill lacked the subjective knowledge of the danger the overhang posed, and (2) it was foreseeable to AJC that the overhang could collapse while Pummill was operating the excavator beneath it. For these reasons I believe that the District Court erred in allowing the assumption of the risk defense to go to the jury, and I would modify the judgment to reinstate the full verdict against AJC, less an offset for AJC's breach of contract claim.

/S/ MICHAEL E WHEAT

20