Justice Sotomayor,
with whom Justice Ginsburg and Justice Breyer join,
concurring in part and dissenting in part.
I concur in the Court’s holding that the Locomotive In­spection Act (LIA), 49 U. S. C. § 20701 et seq., pre-empts peti­tioners’ tort claims for defective design, but I respectfully dissent from the Court’s holding that the same is true of petitioners’ claims for failure to warn. In my view, the lat­ter escape pre-emption because they impose no state-law re­quirements in the field reserved for federal regulation: “the equipment of locomotives.” Napier v. Atlantic Coast Line R. Co., 272 U. S. 605, 612 (1926).
I
Statutory stare decisis compels me to agree that the LIA occupies “the field of regulating locomotive equipment used on a highway of interstate commerce.” Id., at 607. Per­haps this Court might decide Napier differently today. The LIA lacks an express pre-emption clause, and “our recent *641 cases have frequently rejected field pre-emption in the ab­sence of statutory language expressly requiring it.” Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U. S. 564, 617 (1997) (Thomas, J., dissenting). The LIA contains no substantive regulations, let alone a “scheme of federal regulation ... so pervasive as to make reasonable the infer­ence that Congress left no room for the States to supplement it.” Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Instead of relying on such indications of Congress’ intent to oust state law, Napier implied field pre-emption from the LIA’s mere delegation of regulatory authority to the Interstate Commerce Commission. Compare 272 U. S., at 612-613, with, e. g., Hillsborough County v. Automated Medical Laboratories, Inc., 471 U. S. 707, 717 (1985), and New York State Dept, of Social Servs. v. Dublino, 413 U. S. 405, 415 (1973). Nonetheless, •Napier’s construction of the LIA has been settled law for 85 years, and “ ‘[considerations of stare decisis have special force in the area of statutory interpretation.’” Hilton v. South Carolina Public Rail­ways Comm’n, 502 U. S. 197, 202 (1991).
Consistent with the values served by statutory stare deci-­sis, however, it is important to be precise about what Napier held: Napier defined the pre-empted field as the physical composition of locomotive equipment. See 272 U. S., at 611 (“[T]he power delegated ... by the [LIA]. .. extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances”); id., at 612 (“The federal and the state statutes are directed to the same subject — the equipment of locomotives. They operate upon the same object”); see also Act of June 7, 1924, § 2, 43 Stat. 659 (making the LIA’s standard of care applicable to the “locomotive, its boiler, tender, and all parts and appurte­nances thereof”). Petitioners’ defective-design claims fall within the pre-empted field because they would impose state-law requirements on a locomotive’s physical makeup. See ante, at 634.
*642 II
Petitioners’ failure-to-warn claims, by contrast, proceed on a fundamentally different theory of tort liability that does not implicate a product’s physical composition at all. A failure-to-warn claim asks nothing of a product’s design, but requires instead that a manufacturer caution of nonobvious dangers and provide instructions for safe use. Indeed, a product may be flawlessly designed and still subject its man­ufacturer or seller to liability for lack of adequate instruc­tions or warnings. See, e. g., Madden, The Duty To Warn in Products Liability: Contours and Criticism, 89 W. Va. L. Rev. 221 (1987) (“Although a product is unerringly designed, man­ufactured and assembled, injury or damage occasioned by its intended or reasonably foreseeable use may subject the seller to liability. Such liability may be found if the product has a potential for injury that is not readily apparent to the user” (cited in Restatement (Third) of Torts: Products Liability §2 Reporters’ Note, Comment i, p. 95, n. 1 (1997) (hereinafter Restatement))); see also Madden, 89 W. Va. L. Rev., at 221, n. 1 (collecting cases). Petitioners’ complaint embodies just this conceptual distinction. Compare App. 22-23, ¶¶ 10(c) — (e), (g), with id., at 25, HlO(p).[1]
In the jurisdictions relevant to this suit, failure to warn is “a distinct cause of action under the theory of strict products liability.” Riley v. American Honda Motor Co., 259 Mont. 128,132, 856 P. 2d 196,198 (1993). Thus, “ ‘a failure to warn of an injury[-]causing risk associated with the use of a techni­cally pure and fit product can render such product unreason­ably dangerous.’ ” Ibid.; see also, e. g., Jahnig v. Coisman, 283 N. W. 2d 557, 560 (S. D. 1979) (“In products liability suits based upon strict liability, . . . the product itself need not be defective. Where a manufacturer or seller has reason to *643 anticipate that danger may result from a particular use of his product, and he fails to give adequate warning of such a danger, the product sold without such warning is in a defec­tive condition within the strict liability doctrine”); Greiner v. Volkswagenwerk Aktiengésellschaft, 540 F. 2d 85, 92-93 (CA3 1976) (finding that “failure to adequately warn of inher­ent or latent limitations in a product, which do not necessar­ily amount to a design defect,” is “an independent basis of liability” under Pennsylvania law).[2]
Similarly, this Court has explained that a failure-to-warn claim is “narrower” than a claim that alleges a defect in the underlying product. Wyeth v. Levine, 555 U. S. 555, 565 (2009). Thus in Wyeth, this Court affirmed a state damages award based on a drug manufacturer’s failure to provide suf­ficient warnings to clinicians against intravenous administra­tion of the drug, but noted that it was unnecessary to decide “whether a state rule proscribing intravenous administration would be pre-empted.” Ibid. Cf. Bates v. Dow Agro-­sciences LLC, 544 U. S. 431, 444 (2005) (“Rules that require manufacturers to design reasonably safe products ... plainly do not qualify as requirements for ‘labeling or packaging.’ None of these common-law rules requires that manufacturers label or package their products in any particular way”).
The majority treats defective-design and failure-to-warn claims as congruent, reasoning that each asserts a product defect. See ante, at 635-636 (citing Restatement § 2(c) and Comment l). That may be true at a high level of generality, but “[d]esign and failure-to-warn claims . .. rest on different factual allegations and distinct legal concepts.” Id., §2, Comment n, at 35. For example, a manufacturer or seller *644 cannot escape liability for an unreasonably unsafe design merely by issuing a warning. See id., Comment l, at 33 (“Warnings are not ... a substitute for the provision of a reasonably safe design”)- In a fundamental sense, there­fore, a failure-to-warn claim proceeds by taking a product’s physical design as a given. A failure-to-warn claim alleges a “defect” by asserting that a product, as designed, is safe for use only when accompanied by a warning — not that a product must be designed differently.
The majority further conflates defective-design and failure-to-warn claims by noting that each is “directed at” locomotive equipment. Ante, at 635, 636. That is insuffi­cient. Not every state law that “could be said to affect tan­gentially” matters within the regulated field is pre-empted. English v. General Elec. Co., 496 U. S. 72,85 (1990). Rather, “for a state law to fall within the pre-empted zone, it must have some direct and substantial effect” on the primary con­duct of entities subject to federal regulation. Ibid. As explained above, the LIA regulates the physical equipment of locomotives. But petitioners’ failure-to-warn claims, if successful, would have no necessary effect on the physical equipment of locomotives at all, as respondents themselves acknowledge. See Brief for Respondents 55 (petitioners’ failure-to-warn claims “may not themselves literally mandate physical alteration of the locomotive’s design or construction”).
In the majority’s view, a “duty to warn and the accompany­ing threat of liability will inevitably influence” a manufactur­er’s design choices. Ante, at 635, n. 4. But an “influence” is not the same as an “effect,” and not every state law with some imaginable impact on matters within a federally regu­lated field is, for that reason alone, pre-empted. See Eng­lish, 496 U. S., at 85-86; Silkwood v. Kerr-McGee Corp., 464 U. S. 238, 256 (1984). .Indeed, the majority elides the dis­tinction between indirect and direct regulation, even though this Court has explained that the two are not equivalent for pre-emption purposes. See Goodyear Atomic Corp. v. *645 Miller, 486 U. S. 174, 186 (1988) (“Congress may reasonably determine that incidental regulatory pressure is acceptable, whereas direct regulatory authority is not”). State wage- and-hour laws, workplace safety standards, or tax credits for green technology, for example, could all “influence” the means and materials of locomotive equipment manufacture without imposing direct obligations. Nor does the majority substantiate its assertion that the “influence” exerted by a duty to warn need be “inevitable]” or “substantial.” Ante, at 635, n. 4. To the contrary, the requirements imposed by such a duty could be light, and the corresponding liability negligible, in comparison to the commercial value of retain­ing an existing design.
Respondents could have complied with state-law duties to warn by providing instructions for the safe maintenance of asbestos-containing locomotive parts in equipment manuals. See, e. g., Baldwin-Lima-Hamilton Corp., Engine Manual for 600 Series Diesel Engines (1951), online at http:// www.rr-fallenflags.org/manual/blh-6em.html (as visited Feb. 27, 2012, and available in Clerk of Court’s case file). Or respondents could have ensured that repair shops posted signs. See Restatement §2, Comment i, at 29-30 (duty to warn “may require that instructions and warnings be given not only to purchasers, users, and consumers, but also to oth­ers who a reasonable seller should know will be in a position to reduce or avoid the risk of harm”); see also, e. g., Patch v. Hillerich & Bradsby Co., 2011 MT 175, ¶ 20, 361 Mont. 241, 246, 257 R 3d 383, 388 (“While placing a warning directly on a product is one method of warning, other methods of warn­ing exist, including, but not limited to, issuing oral warnings and placing warnings in advertisements, posters, and media releases”). Neither step would encroach on the pre-empted field of locomotives’ “physical elements.” Napier, 272 U. S., at 612. The majority is therefore wrong to say that “the ‘gravamen’ of petitioners’ failure-to-warn claims ‘is still that [Corson] suffered harmful consequences as a result of his ex­posure to asbestos contained in locomotive parts and appur­ *646 tenances.’ ” Ante, at 635 (quoting Kurns v. A. W. Chester­ton Inc., 620 F. 3d 392, 398, n. 8 (CA3 2010)). Rather, the “gravamen” of these claims is that petitioners’ decedent George Corson could have avoided the harmful consequences of exposure to asbestos while repairing precisely the same locomotive parts had respondents cautioned him, for exam­ple, to wear a mask.
Finally, preserving petitioners’ failure-to-warn claims coheres with the LIA’s regulatory regime. Neither the In­terstate Commerce Commission, to which Congress first del­egated authority under the LIA, nor the Federal Railroad Administration (FRA), to whom that authority now belongs, has ever regulated locomotive repair and maintenance. To the contrary, the FRA takes the position that it lacks power under the LIA to regulate within locomotive maintenance and repair facilities. Brief for United States as Amicus Cu­riae in John Crane Inc. v. Atwell, O. T. 2011, No. 10-272, p. 10 (“[T]he field covered by the LIA does not include re­quirements concerning the repair of locomotives that are not in use”); Brief for United States as Amicus Curiae 13 (“The preempted field .. . does not include tort claims based on injuries arising while locomotives are not in use”). The FRA has determined that the Occupational Safety and Health Administration, not itself, bears primary responsibil­ity for workplace safety, including with respect to hazard­ous materials. 43 Fed. Reg. 10583-10590 (1978); cf., e.g., English, 496 U. S., at 83, and n. 6. And the FRA has not promulgated regulations that address warnings specific to maintenance and repair. Because the pre-empted field is congruent with the regulated field, see, e. g., United States v. Locke, 529 U. S. 89, 112 (2000), the majority’s decision sweeps far too broadly.[3]
*647 [[Image here]]
In short, the majority affords the LIA field-pre-emptive effect well beyond what Napier requires, leaving petitioners without a remedy for what they allege was fatal exposure to asbestos in repair facilities. “It is difficult to believe that Congress would, without comment, remove all means of judi­cial recourse for those injured by illegal conduct.” Silk-­wood, 464 U. S., at 251. That is doubly true in light of the LIA’s “purpose ... of facilitating employee recovery, not of restricting such recovery or making it impossible.” Urie v. Thompson, 337 U. S. 163, 189 (1949).
I therefore concur in part and dissent in part.

 Nor do petitioners’ failure-to-warn claims allege that respondents’ loco­motive parts should have been altered, for example, by affixing warnings to the products themselves. See App. 22-23, ||10(c)-(e), (g); id., at 27, ¶ 12(d).

 Petitioners brought suit in Pennsylvania, but alleged that their dece­dent, George Corson, was exposed to asbestos at railroad maintenance and repair shops in Montana and South Dakota. Id., at 42, ¶¶6-7. Because the District Court granted summary judgment on the issue of pre­emption, it performed no choice-of-law analysis to identify the applicable substantive state law. See App. to Pet. for Cert. 22a-39a.

 Disagreeing with the agency’s interpretation, Justice Kagan con­cludes that the LIA empowers the FRA to require warnings as an incident of the authority to prescribe locomotive design. Compare ante, at 639-­640 (concurring opinion), with, e. g., Tr. of Oral Arg. 22-23. Such power, *647 if it exists, must be limited to warnings that impose direct requirements on the physical composition of locomotive equipment. Cf. n. 1, supra; 49 CFR §§229.85, 229.113 (2010). That may be a formal line, but it is the line that this Court drew in describing the scope of the authority conferred by the LIA, and therefore the pre-empted field. See Napier v. Atlantic Coast Line R. Co., 272 U. S. 605, 611-612 (1926). And it is the line that separates petitioners’ design-defeet claims from their claims for failure to warn.