DA 10-0315

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 11

DAN GOLES and BARBARA GOLES,

   Plaintiffs and Appellants,

 v.

JOHN HENRY NEUMANN,

   Defendant and Appellee.

APPEAL FROM:  District Court of the Fifth Judicial District,
       In and For the County of Jefferson, Cause No. DV 08-10913
       Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

     Gregory C. Black, Sean E. Johnson, Corette Pohlman & Kebe,
     Butte, Montana

   For Appellee:

     Gary L. Walton, Walton & Luwe, Butte, Montana

          Submitted on Briefs: January 12, 2011

              Decided: February 4, 2011

Filed:

          _____
               Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Dan and Barbara Goles (Goles) appeal the jury verdict against them issued in the Fifth Judicial District Court, on the grounds that the District Court abused its discretion in issuing jury instructions. We reverse and remand for a new trial.

## ISSUE

¶2 A restatement of the issue on appeal is whether the District Court abused its discretion by issuing a challenged jury instruction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In the summer of 2002 or 2003, John Neumann purchased a home near Pipestone, Montana. At the time of purchase, the property had an existing barn. In 2005, Neumann, using the design of the original barn, constructed an addition to the barn with a new roof. On June 29, 2007, the roof on Neumann's barn addition blew off. While the testimony was somewhat unclear, it appears the airborne roof struck and severed a power line located on Goles' property, east of Neumann's land. The severed line sparked a fire that ultimately consumed seven outbuildings, multiple fences, corrals, trees, a field, and substantial personal property of the Goles.

¶4 On May 14, 2008, Goles filed a complaint against Neumann for negligent construction of the barn addition roof. They demanded a jury trial and prayed for damages, prejudgment interest and costs. They asserted that Neumann failed to use "storm collars" or appropriate metal strapping on the new roof. They argued that storm collars are required to safely secure a roof in place during periods of high winds. Goles

alleged this failure constituted negligence in that it was foreseeable that an improperly constructed roof could cause damage to another's property.

¶5     Goles pointed out that when Neumann reconstructed the barn addition after this incident, he rebuilt it with storm collars to avoid losing the roof again. Goles presented a construction witness, Don Kavanagh, who testified that in windy areas, he uses storm collars on every job he does. Kavanagh explained that storm collars are safety devices that are readily available anywhere. In Kavanagh's opinion, the lack of storm collars given the way the roof was constructed was not reasonable and prudent, and rendered the roof "insufficient."

¶6     Neumann countered that he constructed his barn "in a good and workmanlike manner and in accordance with accepted methods of construction for such a structure." He argued that he designed and constructed his barn addition based on the design of the existing barn, which had been structurally viable through snow and wind for all the years he owned the Pipestone property. He asserted that the barn addition was built properly, and it was unforeseeable that the roof would blow off. Neumann opined that the roof was ripped off by a microburst. He submitted that the lack of storm collars originally and the use of them subsequently did not establish negligence.

¶7     Neumann's wood science expert, Dr. Burke, testified that while storm collars are commonly used in windy areas to secure roofs to the structural rafters, it was significant that Neumann secured the new roof with at least 550 nails and constructed it in a way that it probably required a 100–105-mile-per-hour wind to lift Neumann's roof from the barn. Such a wind was higher than the 90-mile-per-hour typical design wind speed standard.

3

Burke conceded on cross-examination by plaintiff's counsel, however, that when metal

strapping is added to a roof on which the proper nails are used, "you can make it better."

¶8      A jury trial was held on April 19-22, 2010.  At the close of the evidence, the

District Court gave the following instructions:

> **Instruction No. 3:**
> In a civil case, such as this one, the party that makes a claim must prove that claim by the greater weight of the evidence, sometimes referred to as the preponderance of the evidence.  This is called the burden of proof.
>
> A party who has the burden of proof must persuade you by the evidence that his claim is more probably true than not true.  In other words, the evidence supporting the propositions, which a party has the burden of proving, must outweigh the evidence opposed to it.  In determining whether a party has met this burden, you will consider all the evidence, whether produced by the plaintiff or defendants.
>
> **Instruction No. 7:**
> Every person is responsible for injury to the person of another, caused by his negligence.
>
> Negligence is the failure to use reasonable care.  Negligence may consist of action or inaction.  A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.
>
> **Instruction No. 8:**
> The plaintiffs have the burden of proving:
> (1) That the defendant was negligent.
> (2) That the plaintiffs' property was damaged.
> (3) That the defendant's negligence was a cause of the damage to plaintiffs' property.
> (4) The amount of money that will compensate the plaintiffs for the damage to their property.
>
> **Instruction No. 9:**
> Negligence is not proved merely because someone later demonstrates that there would have been a better way.  Reasonable care does not require prescience nor is it measured with the benefit of hindsight.

4

The jury returned a special verdict ruling that Neumann was not negligent. The Goles appeal. We reverse and remand for a new trial.

## STANDARD OF REVIEW

¶9 A district court's decision pertaining to jury instructions is reviewed for an abuse of discretion. While the district court's discretion is broad, it is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. The instructions must prejudicially affect the defendant's substantial rights to constitute reversible error. The purpose of jury instructions is to guarantee decisions consistent with the evidence and the law, which can be accomplished when the instructions are as plain, clear, concise, and brief as possible. *State v. Christiansen*, 2010 MT 197, ¶ 7, 357 Mont. 379, 239 P.3d 949 (internal citations omitted).

## DISCUSSION

¶10 *Did the District Court abuse its discretion by issuing a challenged jury instruction?*

¶11 Goles objected to Instruction No. 9 arguing that the other instructions adequately instructed the jury on the law of negligence and that Instruction No. 9 was "cumulative, unnecessary, and a comment on the evidence." The District Court, relying on *Jacobsen v. State*, 236 Mont. 91, 769 P.2d 694 (1989) (in which the same instruction was given), overruled the objection and gave all four negligence instructions to the jury. Thereafter, the jury returned a verdict for Neumann.

¶12    On appeal, Goles argue that the District Court abused its discretion by overruling their objection to the instruction. They maintain that the instruction was an improper comment on the evidence by the District Court. Goles opine that this instruction allowed the jury to disregard the evidence presented by the experts that storm collars are the better and safer way—i.e., proper way—to secure a roof in a windy area, such as Pipestone, Montana, and that failure to use, or consider using, storm collars constitutes negligence. Goles assert prejudice, claiming that the instruction "effectively directed a verdict in favor of Neumann on the fundamental issue of negligence."

¶13    Neumann counters that the instruction was necessary to "fairly and fully instruct the jury on negligence based upon both parties' theory of the case." He submits that under M. R. Evid. 407, Goles could not prove negligence based exclusively on the fact that Neumann subsequently took remedial measures to ensure that his roof would not be blown off again.[1] Neumann further argues that Goles failed to show prejudice or how the instruction was a comment on the evidence.

¶14    For the reasons set forth below, we conclude that the District Court's giving of Instruction No. 9 was error. We further conclude that the instruction is not a completely correct statement of the law, and we therefore overrule *Jacobsen* to the limited extent it approved the statement and the giving of this instruction.

---

[1] It appears from the record that Goles did not present evidence of Neumann's subsequent use of storm collars as evidence that his initial construction without them was negligence; rather, this evidence appears to have been presented to show that design and construction with storm collars was feasible and such a practice was in use at the time Neumann originally constructed the barn addition roof.

6

¶15 As indicated above, plaintiff's expert Kavanagh opined that the use of storm collars was the reasonable and prudent way to construct a roof in an area with such high winds as Pipestone experienced. Although the defense expert then testified that the construction of the Neumann roof was done in a reasonably prudent manner, he conceded on cross-examination that the use of storm collars "can make it better." Opinion, ¶ 7. Thus, the jury had before it an indication—from both experts—that storm collars can make for a stronger "better" roof in windy areas. Enter Instruction No. 9, which told the jury that "Negligence is not proved merely because someone later demonstrates that there would have been a better way." The jurors could have reasonably inferred from this instruction that the testimony of both experts to the effect that storm collars make better roofs, should be disregarded. As evidence of the better way to build a roof under the Pipestone wind conditions might support a finding of negligence if accepted by the jury, the call to reject this evidence pursuant to jury instruction constituted a comment on the evidence which prejudiced the plaintiffs. As we stated in *Ewing v. Esterholt*, 210 Mont. 367, 376, 684 P.2d 1053, 1058 (1984), "[a]ny instruction which assumes as fact a matter legitimately in controversy, as shown by the evidence, is erroneous." (Citations omitted.)

¶16 Instruction Nos. 3, 7, and 8 properly and fully instructed the jury regarding negligence. Given that Instruction No. 7 informed the jury that a person is negligent if he fails to act as an ordinarily prudent person would act "under the circumstances," Neumann was free to argue that it was the circumstances present at the time the roof was built and not the opinion of an expert offered in hindsight, that should guide the deliberations of the jurors. In other words, the gist of Instruction No. 9 was fair game for

7

argument; it was not, however, fair game for a jury instruction. Jurors are free to accept or reject the arguments of counsel, but they are specifically informed they *must follow* the instructions of the court. Jurors adhering to this mandate could have very well concluded that they were obliged to disregard much of the evidence before them.

¶17 Further, Instruction No. 9 is not, as concluded by the Court in *Jacobsen*, a completely correct statement of the "principles of negligence law." *Jacobsen*, 236 Mont. at 98, 769 P.2d at 698. Among other things, the instruction provides that "reasonable care does not require prescience." "Prescience" is defined as "knowledge of actions or events before they occur; foresight." American Heritage Dictionary 1387, (4th ed., Houghton Mifflin 2000). Depending on the circumstances of the negligence case, however, reasonable care may indeed encompass the duty to employ foresight so as to anticipate problems which might result in the future from one's conduct. As explained in *Busta v. Columbus Hospital Corp.*, 276 Mont. 342, 362, 916 P.2d 122, 134 (1996), "If the chief element in determining whether defendant owes a duty or obligation to plaintiff is the foreseeability of the risk then that factor will be of prime concern in every case. Further, because it is inherently intertwined with foreseeability, such duty or obligation must necessarily be adjudicated only upon a case-to-case basis." As noted above, both parties cast their theory of the case in such terms, with Goles arguing that it was foreseeable that an improperly constructed roof could cause damage to another's property, and Neumann countering that it was unforeseeable that the roof would blow off. Opinion, ¶¶ 4, 5. Therefore, "prescience," as herein defined and under the circumstances of this case, was an appropriate consideration for the jury. Accordingly, we overrule the

8

holding in *Jacobsen* to the effect that Instruction No. 9 is a correct statement of the law and an appropriate jury instruction.

## CONCLUSION

¶18    For the foregoing reasons, we conclude that the District Court abused its discretion when it gave Instruction No. 9 to the jury, and further conclude that the plaintiffs were prejudiced as a result.  We therefore reverse and remand for a new trial.


/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS


Justice Beth Baker, dissenting.

¶19    I dissent from the Court's decision to grant a new trial.  In my view, the District Court did not abuse its discretion by giving a jury instruction previously approved by this Court as a correct statement of the law.

¶20    In *Jacobsen*, we upheld a defense verdict in a case involving damage caused by a wildfire.  *Jacobsen*, 236 Mont. at 98, 769 P.2d at 698.  The plaintiffs alleged negligence by the State in combating the fire.  *Id*.  Not unlike the Defendant in this case, the State claimed that forces of nature—"specifically the sudden, strong winds"—caused the fire and the plaintiffs' resulting losses.  *Id*. at 97, 769 P.2d at 697.  We approved the jury

9

instructions, including the instruction challenged here, as an appropriate statement of the standard of care and a correct statement of principles of negligence law. *Id.* at 98, 769 P.2d at 698.

¶21 It is commonly recognized that "[f]oresight, not hindsight, is the standard by which a person's duty of care is to be judged" in a negligence case. 57A Am. Jur. 2d *Negligence* § 125 (2010); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 460 (Tex. App. 2007) ("[f]oreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence."). Likewise, foreseeability "does not require prescience, omniscience, or clairvoyance." 57A Am. Jur. 2d *Negligence* § 470 (2010) (footnotes omitted). Jury instructions including some mention of "hindsight" have often been considered proper. *Klisch v. MeritCare Med. Group*, 134 F.3d 1356, 1359 (8th Cir. 1998) (upholding a jury instruction stating "[f]oresight, not hindsight, is the standard of negligence," applying Minnesota law and citing cases); *Zebley v. Heartland Indus. of Dawson, Inc.*, 625 F.3d 449, 457-58 (8th Cir. 2010) (upholding a hindsight instruction, applying North Dakota law and citing cases).

¶22 This Court has previously disapproved jury instructions that may tend to elevate certain principles above what is required to be proven in a negligence action or create an impression of a second hurdle the plaintiff is to overcome in order to prevail. *Simonson v. White*, 220 Mont. 14, 25, 713 P.2d 983, 989-90 (1986) (disapproving instruction on "sudden emergency" doctrine); *Graham v. Rolandson*, 150 Mont. 270, 290, 435 P.2d 263, 273 (1967) (disapproving instruction on "unavoidable accident"). I agree with the majority insofar as the first sentence of Instruction No. 9, in an ordinary negligence case,

similarly may inject a "straw issue" into the case, suggesting a standard beyond the presence or absence of ordinary care. *Graham*, 150 Mont. at 290, 435 P.2d at 273.

¶23    I do not agree, however, that the instruction should never be given.  Courts have used the language of Instruction No. 9 numerous times in connection with product liability claims sounding in negligence.  *Dean v. Gen. Motors Corp.*, 301 F. Supp. 187, 192 (E.D. La. 1969) (ruling in favor of defendant manufacturer where "its product was designed with reasonable care for safety in the use for which it was manufactured, measured by the knowledge available both at the time of design and manufacture"); *Garst v. Gen. Motors Corp.*, 484 P.2d 47, 61 (Kan. 1971) (directing judgment for defendant in negligent design case); *Jones v. Hittle Serv., Inc.*, 549 P.2d 1383, 1394 (Kan. 1976); *Maxted v. Pac. Car & Foundry Co.*, 527 P.2d 832, 835 (Wyo. 1974) (upholding judgment for defendant in negligent design case).  In my view, the instruction appears best suited to situations involving evidence of new technological developments subsequent to the defendant's alleged negligent acts.  *See* 3 Frumer & Friedman, *Products Liability* § 18.03 (Matthew Bender 2010) (citing *Dean* for the principle that a manufacturer cannot be held negligent for failing to utilize technologies unavailable at the time); *Maxted*, 527 P.2d at 835 (manufacturer not required "to adopt every possible new device which has been then conceived or invented").

¶24    In addition, although Neumann correctly points out that the trial court is required to instruct the jury on an important part of a party's theory in the case, *Chambers ex rel. Chambers v. Pierson*, 266 Mont. 436, 440-42, 880 P.2d 1350, 1353-54 (1994), Instruction No. 9 was not necessarily the best means of informing the jury's consideration

11

of the limited purpose for which it could consider evidence of subsequent measures taken by Neumann in his reconstruction of the roof. *See e.g. Hash v. State*, 247 Mont. 497, 503, 807 P.2d 1363, 1367 (1991).

¶25    Nonetheless, given that the instruction does not reflect an incorrect principle of negligence law generally, and—until today—had been held a proper jury instruction in a negligence case, I do not believe the trial court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason" in giving it. *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904.

¶26    I would affirm the judgment of the District Court.


                                        /S/ BETH BAKER


Justice Jim Rice joins in the dissenting Opinion of Justice Baker.

                                        /S/ JIM RICE