FILED

10/25/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0621

DA 15-0621

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 272

HOLLY LABAIR and ROBERT LABAIR,
Individually and on behalf of DAWSON R.
LABAIR, deceased minor child,

      Plaintiffs and Appellants,

    v.

STEVE CAREY, Esq., and CAREY LAW FIRM,
and JANE DOES 1-4,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 10-254
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Tina L. Morin, Morin Law Firm, PLLC, Butte, Montana

          Paul Warren, Paul Warren Law, PLLC, Billings, Montana

      For Appellees:

          Mikel L. Moore, Katherine A. Matic, Moore, Cockrell, Goicoechea &
Johnson, P.C., Kalispell, Montana

          Submitted on Briefs:  June 29, 2016

                    Decided:  October 25, 2016

Filed:

_____
                 Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Holly and Robert Labair (the Labairs) appeal from final judgment on their legal malpractice claim entered for defendants Steve Carey and Carey Law Firm (collectively "Carey") in the Montana Fourth Judicial District Court, Missoula County. We vacate and remand for a new trial.

## ISSUE

¶2 The issue on appeal is whether the District Court erred in instructing the jury to decide whether the plaintiffs would have settled the claim underlying their legal malpractice suit.

## BACKGROUND

¶3 The factual background of this case was detailed in *Labair v. Carey*, 2012 MT 312, 367 Mont. 453, 291 P.3d 1160 (*Labair I*), and will not be repeated here at great length. In short, this case stems from the October 2003 death of Dawson Labair, the Labairs' newborn child, following an early delivery by C-section. The Labairs signed a retainer agreement with Carey in January 2004 to pursue a potential medical malpractice claim against Dr. Thomas Baumgartner, their obstetrician. In September 2006, Carey filed a complaint in District Court against Dr. Baumgartner and Community Medical Center alleging negligence and negligent infliction of emotional distress. Carey did not file an application with the Montana Medical Legal Panel (MMLP) before filing the complaint, as required by §§ 27-6-301 and -701, MCA (2005). Carey also failed to file an application with the MMLP before the expiration of the three-year statute of

2

limitations for medical malpractice claims. *See* § 27-2-205, MCA (2005). Carey later admitted to an error in calculating the statute of limitations.

¶4     In March 2010, the Labairs filed a legal malpractice complaint against Carey alleging negligence and several other causes of action stemming from the lapsed statute of limitations. In November 2011, the District Court granted summary judgment to Carey on the grounds that the Labairs had failed to establish a prima facie legal malpractice case because they failed to provide expert evidence on causation and damages in the underlying medical malpractice claim. The Labairs appealed, and we reversed and remanded in *Labair I*.

¶5     We concluded in *Labair I* that the Labairs were entitled to summary judgment on the duty, breach, and causation elements of their legal malpractice claim against Carey. We remanded the case to the District Court for a trial to establish two required components of the damages element of the Labairs' claim: first, "that it is more probable than not that they would have recovered a settlement or a judgment against Dr. Baumgartner but for Carey's negligence," and second, "the value of the lost settlement and/or judgment." *Labair I*, ¶ 41.

¶6     On remand, the District Court conducted a six-day jury trial in which both sides presented expert testimony on the likelihood of a settlement or a judgment in the underlying case and the estimated value of that settlement or judgment. Charles Burdell, the Labairs' expert witness on settlements, testified that the case could have settled for $500,000 to $750,000. He also testified that over 90% of medical negligence cases settle.

Carey's settlement expert testified that 95% of medical negligence cases settle, and that the Labairs' claim likely would have settled for $100,000 to $300,000.

¶7 Both Holly and Robert Labair testified at trial, but neither explicitly said whether or not they would have settled with Dr. Baumgartner. Holly Labair said she believed Steve Carey could help her "[o]btain justice" and "hold [Dr. Baumgartner] accountable." Steve Carey testified that Robert Labair was angry at Dr. Baumgartner, but neither the Labairs' attorney nor Carey actually established the Labairs' desires regarding settlement. The defense played a videotaped deposition of Dr. Baumgartner, in which Dr. Baumgartner said he would have settled with the Labairs for a nominal amount. No other evidence on the Labairs' or Dr. Baumgartner's willingness to settle the underlying medical malpractice claim was presented at trial.

¶8 The jury issued its verdict on a special verdict form, which posed yes or no questions to the jury regarding key elements of the Labairs' claim. Relevant portions of the verdict form, including the jury's responses, read as follows:

**QUESTION NO. 1:**

Have the Labairs proven by a preponderance of the evidence that Dr. Baumgartner's treatment of Holly and Dawson Labair failed to meet the accepted standards of skill and care at the time the services were provided?

ANSWER: [ X ] Yes        [    ] No

If your answer to QUESTION NO. 1 is "No," then skip QUESTION NO. 2 and QUESTION NO. 3 and proceed to QUESTION NO. 4. If your answer to QUESTION NO. 1 is "Yes," then proceed to QUESTION NO. 2.

4

**QUESTION NO. 2:**

Have the Labairs proven by a preponderance of the evidence that Dr. Baumgartner's failure to meet the accepted standards of skill and care at the time the services were provided to Holly and Dawson Labair caused injuries and damages to the Labairs?

ANSWER: [    ] Yes        [ X ] No

If your answer to QUESTION NO. 2 is "No," then skip QUESTION NO. 3 and proceed to QUESTION NO. 4.  If your answer to QUESTION NO. 2 is "Yes," then proceed to QUESTION NO. 3.

[The jury then skipped Question No. 3, which inquired what damages the Labairs would have recovered from a jury verdict against Dr. Baumgartner.]

**QUESTION NO. 4:**

Have the Labairs proven by a preponderance of the evidence that Holly and Robert Labair lost the opportunity to recover a settlement from Dr. Baumgartner as a result of Steve Carey's and the Carey Law Firm's admitted negligence and failing [*sic*] to file a timely medical malpractice claim against Dr. Baumgartner?

ANSWER: [    ] Yes        [ X ] No

If your answer to QUESTION NO. 4 is "No," then skip QUESTION NO. 5 and proceed to QUESTION NO. 6. If your answer to QUESTION NO. 4 if [*sic*] "Yes," then proceed to QUESTION NO. 5.

The jury then skipped to Question No. 6, which is not at issue on appeal.

¶9     During deliberations, the jury asked the District Court for clarification of Question No. 4: "In regards to question 4 on the questionare [*sic*] are we to consider whether the Labairs would have settled or did they just lose the opportunity?"

¶10     The District Court discussed the jury's question with counsel for both parties and suggested that the jury be given a new instruction, which read as follows:

In response to your question, attached hereto,

You are instructed that the Labairs did lose the opportunity to settle with the dismissal of the underlying case.

The question of 4 is would they have settled.

If your answer is yes, go to question no. 5.

If your answer is no go to question no. 6.

¶11 In accord with M. R. Civ. P. 51(c), the Labairs made a timely and specific objection to the District Court's proposal, arguing that "all we have to prove is that we could have secured a settlement, and the moment Dr. Baumgartner said he would have settled, we proved that." The District Court disagreed, explaining:

[T]he settlement value has been established, but the question remains . . . would the Labairs have taken the settlement? And I don't know how we get around that question for them. . . . I don't know that, from listening to Mr. Carey's testimony, that they would have settled . . . .

¶12 The District Court then gave the jury the new instruction, which was identified as Instruction No. 36. With this additional instruction, the jury answered "No" to Question No. 4, apparently indicating that the Labairs would not have settled the underlying medical malpractice claim. After the jury was discharged, the Labairs orally renewed their objection to Instruction No. 36:

The Montana Supreme Court did not lay the burden on the plaintiffs of whether they would have settled. There was no way for the plaintiffs to give that testimony if they would have settled without knowing the amount. . . . We believe that this instruction to the jury is a reversible error, your Honor.

Carey countered that the Labairs' willingness to settle was an element of proof implied by our holding in *Labair I*:

> [T]he Labairs bore the burden from the beginning, at least since the Supreme Court's decision to prove both that there could have been a settlement and the value of that settlement. It's a failure of proof on the part of the plaintiffs' case, and they had all the opportunity in the world to provide that proof to this court and to this jury, and they failed to do it.

¶13 The District Court decided to let the jury's verdict stand, but noted "Dr. Baumgartner's testimony is that he would have only agreed for a minimal settlement on his part," implying the Labairs also failed to show a potential settlement value that would have been agreeable to both sides. The District Court formally entered judgment on September 22, 2015, from which the Labairs appeal.

## STANDARD OF REVIEW

¶14 We review a district court's selection of jury instructions for abuse of discretion. *Cechovic v. Hardin & Assocs.*, 273 Mont. 104, 116, 902 P.2d 520, 527 (1995). Taken in their entirety, "jury instructions must fully and fairly instruct the jury regarding the applicable law." *Goles v. Neumann*, 2011 MT 11, ¶ 9, 359 Mont. 132, 247 P.3d 1089. When a jury instruction is based on a district court's conclusion of law, we apply a plenary review standard. *W. Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 18, 359 Mont. 34, 249 P.3d 35.

## DISCUSSION

¶15 *Did the District Court err in instructing the jury to decide whether the plaintiffs would have settled the medical malpractice claim underlying their legal malpractice suit?*

¶16 Legal malpractice is a type of professional negligence consisting of four essential elements: (1) a duty owed by the attorney to the client, (2) a breach of that duty, (3) causation, and (4) damages to the client. *Labair I*, ¶ 17. Because *Labair I* established

7

the first three elements of the Labairs' claim against Carey, the sole issue on remand was damages.

¶17    It is well established that a plaintiff in a legal malpractice case "'must show by a preponderance of the evidence what injuries he suffered'" as a result of the malpractice. *Labair I*, ¶ 43 (quoting *Lieberman v. Emp'rs Ins. of Wausau*, 84 N.J. 325, 342, 419 A.2d 417, 426 (N.J. 1980)).    Ultimately, the plaintiff must prove that damages are not speculative, but have a sufficient basis in fact.    *Labair I*, ¶ 45 (citing *Merzlak v. Purcell*, 252 Mont. 527, 530, 830 P.2d 1278, 1280 (1992)).    The method by which the plaintiff proves those injuries is generally left to the discretion of the trial court.    *Labair I*, ¶ 43 (citing *Lieberman*, 419 A.2d at 427).    In cases like the present, proving damages requires a plaintiff to effectively prosecute a "suit within a suit," wherein the claim underlying the legal malpractice must be proven by a preponderance of the evidence in order to show the legal malpractice caused actual harm.    *Stott v. Fox*, 246 Mont. 301, 305, 805 P.2d 1305, 1307 (1990); *Richards v. Knuchel*, 2005 MT 133, ¶ 18, 327 Mont. 249, 115 P.3d 189, *overruled on other grounds by Labair I*, ¶ 23.    The jury in such a case must determine whether a reasonable jury considering the underlying claim could find for the plaintiff. *Labair I*, ¶ 26 (citing *Richards*, ¶ 18).

¶18    We acknowledged in *Labair I* the difficulty of prescribing the particular types of evidence and presentation that a legal malpractice "suit within the suit" would require. "Different types of legal malpractice cases will require different types of evidence and presentation." *Labair I*, ¶ 44. We also noted the Labairs' claim against Carey presents a unique case in that the Labairs lost not only the right to sue Dr. Baumgartner and recover

8

a verdict for medical malpractice, but they also lost the opportunity to pursue a pretrial settlement. *Labair I*, ¶ 31. Because the lost possibilities of securing either a verdict or a settlement were each potential injuries, we remanded the case to determine whether the Labairs could prove it was more probable than not that they would have recovered a verdict or a settlement. *Labair I*, ¶ 45.

¶19     On remand, the District Court rightly instructed the jury that the Labairs could not recover for the loss of both a verdict and a settlement. To recover the value of a verdict in the underlying claim, the Labairs would need to prove each element of their underlying claim against Dr. Baumgartner by a preponderance of the evidence. Even if the Labairs failed to prove that they would have recovered a *verdict* against Dr. Baumgartner, however, the lost possibility of a pretrial settlement with Dr. Baumgartner remained a distinct injury for which the Labairs could recover damages.

¶20     In answering Questions 1 and 2 of the special verdict form, the jury concluded the Labairs proved Dr. Baumgartner breached the standard of care, but that they failed to prove that this breach caused damages. As a result, the Labairs are not entitled to damages that would be recoverable from a verdict in the underlying claim against Dr. Baumgartner. The Labairs do not allege any error in the District Court's instruction on the question of verdict damages. The sole question on appeal is whether the Labairs satisfied their burden of proving the lost opportunity for a pretrial settlement in the underlying claim. Consequently, the crux of this case is the scope of the Labairs' burden of proof for the lost opportunity to settle.

9

¶21 The Labairs argue *Labair I* never required them to prove that they would have *actually settled* with Dr. Baumgartner. Instead, the Labairs interpret *Labair I* as imposing the more limited burden of proving the likelihood of a settlement and the value of a potential settlement, both of which they established through expert testimony. Carey counters it would be improper to relieve the Labairs of the burden of proving they would have settled with Dr. Baumgartner. While Carey's negligence undoubtedly deprived the Labairs of the opportunity to settle, Carey argues it is still possible that the Labairs would have refused to settle if the opportunity presented itself. Carey maintains that if the Labairs would have refused to settle, the lost opportunity to settle would not be an actual injury.

¶22 As stated in *Labair I*, the Labairs' burden on remand was as follows: "At trial, the Labairs must establish that it is *more probable than not* that they would have recovered a settlement or a judgment against Dr. Baumgartner but for Carey's negligence, as well as the value of the lost settlement and/or judgment." *Labair I*, ¶ 41 (emphasis added). We did not hold the Labairs had to prove they would have settled. Instead, the Labairs were required to prove a settlement was more probable than not. The Labairs clearly satisfied this burden through expert testimony establishing that settlements occur in 90% of cases similar to theirs. That testimony was bolstered by Carey's expert, who estimated that 95% of medical malpractice cases settle.

¶23 The Labairs also satisfied their burden of proving the likely value of the lost opportunity to settle. The Labairs' settlement expert estimated the likely settlement value would fall between $500,000 and $750,000. Although Carey's expert testified to a much

lower range of settlement values, between $100,000 and $300,000, the jury could weigh this conflicting testimony and determine a value for the lost opportunity. Thus, the Labairs' evidence was sufficient to satisfy the two-part burden we outlined in *Labair I*. When the jury asked for clarification of this burden, however, the District Court effectively added a new element: whether the Labairs would have actually accepted a settlement. Moreover, the District Court added this element to the burden of proof after both parties had rested and the case was in the jury's hands. Because the District Court's instruction did not fairly instruct the jury on the law of the case we established in *Labair I*, we conclude that the instruction was an abuse of discretion that demands a new trial.

¶24 Carey maintains this additional element is a logical extension of *Labair I*, because the Labairs' willingness to accept a settlement is a prerequisite to actually recovering a settlement. We stated in *Labair I*, however, that the Labairs simply needed to prove it *was more probable than not* that they would have recovered a settlement. We did not hold that the Labairs must show they were willing to settle and therefore would have *actually recovered* a settlement. If we adopted such a rule, it stands to reason that the Labairs must also prove Dr. Baumgartner would have been willing to settle, because a settlement requires the assent of both parties. But it would be impossible to replicate the give-and-take of settlement negotiations with Dr. Baumgartner now that he is shielded from liability by Carey's negligence. Indeed, Dr. Baumgartner has no incentive to settle now that the Labairs' claim against him is time-barred. Carey should not be shielded

11

from liability simply because his own negligence makes it impossible to prove today what the parties would have done in settlement negotiations years ago.

¶25 The appropriate burden of proof is the one we established in *Labair I*. The Labairs must prove two elements to recover for the lost opportunity to settle with Dr. Baumgartner: (1) that they more probably than not would have recovered a settlement with Dr. Baumgartner, and (2) the likely range of value of the lost settlement. We note that neither Question No. 4 of the special verdict form nor Instruction No. 36 clearly posed this first element as a question for the jury. Question No. 4 asked whether the Labairs had "proven by a preponderance of the evidence that Holly and Robert Labair lost the opportunity to recover a settlement from Dr. Baumgartner as a result of Steve Carey's and the Carey Law Firm's admitted negligence." This determination, however, was established as law of the case by virtue of our conclusion in *Labair I* that the Labairs did in fact lose the opportunity to settle. Instruction No. 36 corrected this error, but then proceeded to direct the jury to answer the subjective question of whether the Labairs would have actually settled, when *Labair I* required only that they answer the objective question of whether it was more probable than not that they would have recovered a settlement. At this stage, the threshold question for the jury should have been whether the Labairs had proven that they more probably than not would have recovered a settlement.

¶26 Because both parties' experts testified that a settlement was more probable than not, the Labairs argue judgment as a matter of law is appropriate on this threshold question. We agree. "Judgment as a matter of law is properly granted only when there is

12

a complete absence of any evidence which would justify submitting an issue to a jury." *Martin v. BNSF Ry. Co.*, 2015 MT 167, ¶ 8, 379 Mont. 423, 352 P.3d 598 (citing *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 16, 362 Mont. 53, 261 P.3d 984). When considering whether judgment as a matter of law is proper, we view evidence in the light most favorable to the party opposing such judgment. *Martin*, ¶ 8 (citing *Weber*, ¶ 16). By the lowest estimate presented at trial, the probability of settlement was 90%. The only evidence that comes close to contradicting this estimate is testimony from Carey's expert, who stated that the Labairs' specific claim "had a better-than-even chance of settlement if they would have been willing to accept" a settlement. Setting aside the fact that this testimony is couched in the Labairs' willingness to settle, which we have held is not dispositive of their recovery, the testimony nonetheless shows that a settlement was more probable than not. Even considering this evidence in the light most favorable to Carey, the only reasonable conclusion is that the Labairs more probably than not would have recovered a settlement. Thus, we conclude that the Labairs are entitled to judgment as a matter of law on this first element of settlement damages.

¶27 In the new trial, the District Court need not revisit the question of whether Dr. Baumgartner's treatment of Holly and Dawson Labair failed to meet accepted standards of care, as the jury here answered that question in the affirmative. In addition, the District Court need not revisit the question of damages for a lost opportunity to recover a *verdict*. As explained above, the jury already resolved that question in Carey's favor, and the Labairs do not allege the District Court erred in instructing the jury on that question. *See supra* ¶ 20. Instead, the new trial will address damages for the lost opportunity to

13

settle with Dr. Baumgartner. Because the Labairs are entitled to judgment as a matter of law on the first element of settlement damages, the only remaining evidentiary burden borne by the Labairs is showing the likely range of value of a settlement.

**CONCLUSION**

¶28 For the foregoing reasons, we vacate the judgment of the District Court and remand for a new trial on the question of the value of the lost opportunity to settle.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA

Justice Beth Baker, concurring.

¶29 I concur with the Court's disposition of this appeal based on the law of the case established in *Labair I*. I do not conclude from this disposition, however, that a plaintiff in every legal malpractice case is relieved from the burden of proving that she would have accepted a settlement. It is not necessary for us to decide that here, and I do not interpret today's decision to settle that question as a matter of law.

/S/ BETH BAKER

Justice Laurie McKinnon, dissenting.

¶30 I respectfully dissent from the Court's decision to reverse and remand for a new trial. In my opinion, the Court has rewritten *LaBair I*; changed the law of the case, to the

14

extent the law of *Labair I* could reasonably be discerned; and conflated burdens of proof for causation and damages. The District Court labored onerously in its commitment to follow and understand our decision in *LaBair I*. The court's instruction that the Labairs must show that they would have *actually* settled is a correct statement of the law of negligence. However, regardless of the correctness of the instruction, when examining the context of the entire record—the jury instructions as a whole; the Special Verdict form (to which no objection was made); and, in particular, our confusing reasoning in *Labair I*—I cannot find that the District Court abused its discretion when it instructed the jury that for the Labairs to recover the jury must find they "would have settled."

¶31    Our decision results from our efforts in *Labair I* to create an injury and fashion a remedy which was not only novel and unique, but distanced this Court from the mainstay of authority provided by other jurisdictions. In *Labair I*, we recognized, for the first time and devoid of any authority, that a loss of opportunity to *settle* a claim can be an injury. Although we cited as authority for creating this new injury *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109, 110 (La. 1982), stating "[o]ther jurisdictions have similarly recognized that the loss of the opportunity to *bring a claim* can constitute prima facie evidence of an injury," *Labair I*, ¶ 32, (emphasis added), *Jenkins* considered only the lost opportunity to bring a claim and not the lost opportunity to settle a claim. It is well established that the loss of opportunity to bring a claim is a recognizable cause of action in legal malpractice cases which, within the framework of a "suit within a suit," is a compensable injury if causation is demonstrated. However, there is no authority recognizing a right to settlement and injuries resulting from a loss of settlement

15

opportunity.[1] Nonetheless, while we recognized a distinction in the type of injury between a lost opportunity to bring a claim and a lost opportunity to settle a claim, we failed to appreciate a distinction in causation and damages between the injuries and to instruct the trial court on remand accordingly. Had we done so, we might have seen the fallacy of our reasoning in allowing the pursuit of a claim for loss of opportunity to settle. The court, counsel, and the jury had the misfortune of laboring under our guidance in *Labair I*. In my opinion, despite the unmanageability of *Labair I*, the jury recognized and dealt with the salient issue in these proceedings—that the Labairs were not interested in settling their claim. I would not prolong the agony of this case and add another layer of poorly reasoned precedent by finding an abuse of discretion on the part of the trial court.

¶32 Settlements result from a multitude of unique factors, including the mental disposition of the parties, which are difficult to account for when considering causation and damages. Preliminarily, in my opinion, "[t]here is "no 'right' to a settlement, which is an extra-judicial action of the parties taken for any number of reasons, some of which are completely unrelated to a claim's validity." *Labair I*, ¶ 63 n. 1 (J. Rice, concurring). The District Court's misfortunes stem from our creation in *Labair I* of a stand-alone injury of a loss of settlement potential, and our statements implying that causation for

---

[1] *Jenkins* simply does not stand for the proposition we cited it for: recognition of a loss of settlement of a claim; *Jenkins* concerns the loss of opportunity to bring a claim. *Spencer*, also cited in *Labair I*, ¶ 32, was decided within the context of a criminal matter and the loss of opportunity to bring a post-conviction proceeding. It likewise is not authority for the creation of a loss of opportunity to settle in a medical malpractice action. *Jenkins*, which followed the majority line of cases, recognized that the "suit within the suit" would necessitate examining the success of the underlying court action in the post-conviction proceedings, a matter which is more easily susceptible to a causation analysis than the likelihood of settlement in a medical malpractice action.

such a claim has already been established by Carey's admission of duty and breach of that duty. Furthermore, we conflated causation for these two distinct injuries. In *Labair I,* we held that "Carey was the cause-in-fact of the Labairs' loss of their medical malpractice case . . . ;" *Labair I*, ¶ 39 n. 5: that is, that Carey was the cause-in-fact of the Labairs' loss of the opportunity to *bring a claim*. It does not follow, however, that such a conclusion is equally dispositive of a lost opportunity to settle. There is little question that by hiring a lawyer and pursuing a medical malpractice action, the Labairs intended to *bring a claim*; however, the same cannot be said regarding an intention to *settle a claim*, especially when there was evidence indicating the Labairs were not interested in settling.[2] The jury and the District Court, in contrast to this Court in *Labair I* and here, appreciated these distinctions. While the Labairs' counsel protested and argued that another burden was being placed upon the Labairs, the court's instruction that the Labairs would have actually accepted a settlement was consistent with the law of causation and damages.

¶33 It is thus painfully apparent that the issues in the current appeal arise from our inconsistencies and incorrect reasoning regarding causation and damages in *Labair I*. We stated in *Labair I* that "[u]nder circumstances such as this—where duty and breach are admitted, and an untimely filing caused the loss of a claim with some value—legal causation can be decided as a matter of law." *Labair I*, ¶ 36. Despite our conclusion that causation was established as a matter of law, *Labair I*, ¶ 36, and fact, *Labair I*, ¶ 39 n. 5, we remanded for the Labairs to establish, within the context of a "suit within a suit"

---

2  Indeed, Holly Labair testified that she "absolutely [did] not" bring this lawsuit against Dr. Baumgartner for the money. And Carey testified that Robert Labair told him "on more than one occasion that he wanted to kill Dr. Baumgartner."

17

analysis, that "it is more probable than not that they would have recovered a settlement or a judgment against Dr. Baumgartner *but for* Carey's negligence, as well as the value of the lost settlement and/or judgment." *Labair I*, ¶ 41 (emphasis added). It makes no sense to, first, remove from determination by a jury the question of causation, finding it established as a matter of law and leaving nothing but the amount of damages to be ascertained by a jury. It is, second, inconsistent to next remand for causation to be established—"they would have recovered a settlement . . . but for Carey's negligence . . . ." *Labair I*, ¶ 41. Our use of "but for" language relates to causation, which, after examining our precedent discussing "proximate cause" within the context of a legal malpractice action, we concluded was the appropriate test to be applied. *Labair I*, ¶ 21 ("We take this opportunity to clarify our previous legal malpractice jurisprudence and reconcile the causation analysis with this Court's decision in *Busta* . . . ."). Nonetheless, we simultaneously established causation as a matter of law, *Labair I*, ¶ 36, while remanding for the jury to determine causation in the context of a "suit within a suit." *Labair I*, ¶ 41. Significantly, with respect to this inconsistency, we fail to distinguish between causation and damages respecting loss of opportunity to *bring a claim* and that of a loss of opportunity to *settle a claim*.

¶34    Today, the Court rewrites *Labair I*, in favor of the Labairs, to definitively conclude that causation regarding the loss of opportunity to settle a claim, in addition to causation to bring a claim, was established in *Labair I* as a matter of law. The Court enters judgment as a matter of law on duty, breach, and causation, leaving only the amount of damages to be determined by a jury. First, as already seen, we were

18

inconsistent in *Labair I* regarding causation and, in particular, its relationship to damages. Second, we failed to appreciate a distinction in causation between the two types of injuries. There is no question that by hiring a lawyer and pursuing a medical malpractice action, the Labairs intended to bring a claim which they lost the opportunity to pursue. However, the same cannot be said for an intention to accept and settle a claim, which must first be demonstrated before the Labairs can receive damages as compensation for the injury of a lost opportunity to pursue settlement. Accordingly, in establishing a new "two-part burden" we have changed the law of the case by removing the requirement that the Labairs demonstrate they would have accepted a settlement and that "but for" Carey's negligence they lost the opportunity to settle. Instead, we include what was omitted in *Labair I* by concluding "[t[his determination, however, was established as law of the case by virtue of our conclusion in *Labair I* that the Labairs did in fact lose the opportunity to settle." Opinion, ¶ 25. Thus, the only remaining element the Labairs must establish is the "likely range of value of a settlement." Opinion, ¶ 27. (*See also* Opinion, ¶ 26; "thus we conclude that the Labairs are entitled to judgment as a matter of law on this first element [but for causation] of settlement damages.") We arrive at this conclusion despite the jury having found that Carey's failure to file a claim was not the cause of the Labairs' injuries, both for the loss of opportunity to bring a claim and the loss of opportunity to settle a claim. This leaves us with the unbelievable and astounding proposition that, in a negligence action, this Court may remove from consideration by a jury nearly the entire action—duty, breach, causation, and damages—leaving only the *amount* of damages to

19

be determined by the jury. While we may not have stated this clearly in *Labair I*, we do so, unfortunately, here. The Court's reasoning, at the very least, is unprecedented.

¶35 Finally, I would be remiss if I failed to point out that the District Court's instruction to the jury that it must find the Labairs actually would have settled was, in fact, a correct statement of the law. A legal malpractice case is a negligence action that imposes a standard of care that is both objective and external, rather than that of individual judgment. "It must be the same for all persons, since the law can have no favorites; and yet allowance must be made for some of the differences between individuals, the risk apparent to the actor, his capacity to meet it, and the circumstances under which he must act." Restatement (Second) of Torts § 283 cmt. c (1965). The law of torts attempts to "put an injured person in a position as nearly as possible equivalent to his position prior to the tort." Restatement (Second) of Torts § 901 cmt a (1965). Attorney malpractice is professional negligence. "The proper measure of damage in an attorney malpractice action is the difference between the client's recovery and the amount that would have been recovered by the client except for the attorney's negligence." *Merzlak v. Purcell*, 252 Mont. 527, 529, 830 P.2d 1278, 1279 (1992). A claim of malpractice must have resulted in damages. *Kane v. Miller*, 258 Mont. 182, 187, 852 P.2d 130, 133 (1993).

¶36 In contrast to the duty of care element for a negligence action, we do not impose an objective standard or "reasonable man" standard when determining whether causation has been established and damages have been incurred. Hence, the Court is incorrect when it concludes that the District Court, by requiring the Labairs to establish they would

20

have actually settled, imposed an additional, subjective burden of proof upon the Labairs. Opinion, ¶¶ 24–25. Contrary to the Court's reasoning, whether the Labairs themselves did indeed sustain damages is a subjective inquiry which examines the particular circumstances of the Labairs' situation. Proof of damages means that the recovering party has demonstrated that they would have actually recovered; that is, under the circumstances present here, that they would have accepted the settlement. This is in accord with jurisdictions that have considered the failure of an attorney to communicate a settlement offer. *See Cannistra v. O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*, 286 A.D.2d 314, 316 (N.Y. App. Div. 2001) ("Here, the plaintiffs failed to demonstrate that, but for the defendant's alleged negligence, they would have accepted the County's settlement offer and not have sustained any damages."); *Bauza v. Livington*, 40 A.D.3d 791 (N.Y. 2007) ("Here, the plaintiffs failed to demonstrate that, but for the defendant's alleged negligence, they would have accepted the defendant's offer of settlement[.]"). To recover in any negligence action, there is always a requirement that the damages be the plaintiff's actual damages which, by their very nature, is not an objective standard.

¶37 When reviewing a trial court's instructions to the jury, we consider the instructions in their entirety, in connection with other instructions given, and the evidence introduced at trial. Instructions to the jury must fully and fairly instruct the jury regarding the applicable law. *Goles*, ¶ 9. Consistent with *Labair I*, the court instructed the jury repeatedly that the Labairs had to show they "would have recovered" a judgment or settlement from Dr. Baumgartner. Consistent with general principles in negligence law

21

of causation and damages, the court responded to a specific question from the jury, likely prompted by their assessment that the Labairs were not interested in settling, that the Labairs had to demonstrate that they would have accepted a settlement. In my opinion, this was an accurate statement of the law and was within the court's broad discretion to assess whether its response went beyond the parties' expectations when presenting their case to the jury. The distinction between "would have settled" and "would have recovered a settlement" is immaterial and does not warrant reversal and remand for a new trial. When considered with all the instructions given and the confusing analysis we provided in *Labair I,* I cannot fault the District Court and find an abuse of discretion when it instructed the jury that they must find the Labairs "would have settled" in order to recover for their lost opportunity to settle. The Labairs received a jury trial on their claims and the jury found causation did not exist between Carey's negligence and the Labairs' lost opportunity to bring a claim and settle a claim. The Labairs' substantial rights have not been prejudiced.

¶38 I dissent from the Court's decision holding otherwise.


/S/ LAURIE McKINNON


Justice Jim Rice joins in the foregoing dissent.


/S/ JIM RICE


22